Carolyn J. Johnsen - 011894
cjjohnsen@jsslaw.com
Kami M. Hoskins - 026271
khoskins@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:13-bk-20029-DPC<br><br>**DECLARATION OF WILLIAM J. COMER IN SUPPORT OF FIRST DAY MOTIONS** |

I, William J. Comer, hereby make the following declaration of my own personal knowledge as follows:

1. I am an adult person over eighteen (18) years of age residing in Maricopa County, Arizona.

2. I am the Chief Executive Officer ("**CEO**") of Surgical Specialty Hospital of Arizona, LLC (the "**Debtor**"), the debtor and debtor in possession in the above-captioned case.

3. As the CEO of the Debtor, I am duly authorized to submit this Declaration on behalf of the Debtor.

4. I make this Declaration in support of:

   a. *Emergency Motion for Interim and Final Orders Under 11 U.S.C. §§ 366 Determining Adequate Assurance of Payment for Future Utility Services and Establishing Determination and Objection Procedures*;

   b. *Emergency Motion for Order Authorizing Debtor to Pay Pre-Petition*

*Wages and Salaries and to Honor and Continue Pre-Petition Employee Benefits*;

    c. *Emergency Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 345, and 363 Authorizing Maintenance and Use of Debtor's Existing Bank Accounts, Cash Management System, and Business Forms*;

    d. *Emergency Motion for Use of Cash Collateral*; and

    e. *Application for Order Authorizing Retention and Employment of Jennings, Strouss & Salmon, P.L.C. as Attorneys for the Debtor*.

## Overview

5. The Debtor was formed on March 28, 2005 under the laws of the State of Arizona. It also operates under the name The Surgical Hospital of Phoenix. The principal activity of the Debtor is to provide surgical operating facilities and related healthcare services to doctors and their patients in Maricopa County, Arizona.

6. The Debtor is a full-service hospital specializing in inpatient and outpatient spine and orthopedic surgeries. It also provides an additional wide range of procedures including bariatric, general surgery, pain management, gastrointestinal, imaging and lab services. The Debtor is a 100% physician-owned hospital consisting of 15 physician owners (members) and has approximately 200 physicians credentialed to provide services. The Debtor's staff consists of about 100 employees, including nurses.

7. The Debtor's Board of Directors is comprised of Daniel Lieberman, Chair; Christopher Yeung, Chief of Staff; Steven Kassman, owner designee; and me as ex-officio.

8. The Debtor leases its hospital facility from SSHA Building, LLC ("**SSHA**"), an Arizona limited liability company owned by the physicians who also own the Debtor. The Debtor's monthly lease payments to SSHA are $101,946.20. SSHA pays a monthly management fee of $4,574.63 to the Debtor.

9. The Debtor has been designated as the preferred healthcare provider of the Phoenix Coyotes, which are part of the National Hockey League. The Debtor consistently demonstrates low infection rates (currently .03%) and very high patient satisfaction scores (currently on average of 83%). The Debtor prioritizes quality measures and patient care and as a result has patients and their families providing superior feedback.

## Assets and Liabilities

10. The Debtor's assets consist of inventory and supplies believed to be valued at approximately $1,000,000.00, equipment believed to be valued at approximately $1,800,000.00, and collectible receivables believed to have a value of approximately $1,300,000.00. Annual gross revenues are about $70,000,000.00; annual net revenues are about $22,000,000.00.

11. The Debtor's secured debt consists of about $425,000.00 owed to Wells Fargo Bank, National Association ("**Wells Fargo**"), which claims a security interest in all of the Debtor's assets, plus approximately $450,000.00 related to various capital leases.

12. The Debtor's accounts payable totals approximately $2,700,000.00, and total unsecured trade debt is approximately $3,200,000.00. The Debtor has a loan outstanding from its affiliate, SSHA in the amount of approximately $2,145,833.39.

13. In addition, the Debtor, as a physician-owned hospital, has the obligation to report potential compliance issues pursuant to various healthcare regulations. The Debtor's pending issues could result in liability for the return of Medicare/Medicaid funds as high as $14,700,000.00. The Debtor, however, disputes such liability and has been working with the appropriate agencies toward a resolution.

14. Over the last few years, the Debtor has suffered from cash-flow problems based on a number of administrative issues, including the lack of strict vendor and supply management, taking on non-profitable cases, maintaining

unprofitable healthcare payor contracts, inefficient management of accounts receivable, overstaffing, and dealing with regulatory questions.

15. Since I arrived in 2012, the Debtor has taken many steps to rectify these problems. Specifically, the Debtor has reduced salaries by over $2,000,000.00; reduced costs of certain of its critical surgical devices, namely implants; and eliminated most of its non-profitable cases, all while maintaining patient satisfaction and quality measures at industry best-practice standards.

16. Nevertheless, despite the past and on-going efforts to increase revenues, decrease expenses, and maintain quality measures, the tight cash situation persists. Consequently, the Debtor believes that a Chapter 11 proceeding would give it a respite from the cash strains and allow it to better address creditor issues and restructure its operations and its debt.

## **Accounts and Cash Management**

17. The Debtor is a healthcare company that maintains, among other things, Medicare accounts.

18. In this case, the Debtor maintains multiple checking accounts with Wells Fargo Bank. The Debtor's accounts and cash management system are setup with electronic funds transfer payments from the Medicare and Medicaid programs and with numerous health insurance companies. Closing the accounts and altering the cash management system would deeply disrupt the Debtor's operations and payroll systems, payment from health insurers and Medicare and Medicaid, and would hinder the Debtor's ability to manage the hospital at the critical initial stages of its Chapter 11 case. The Debtor anticipates that changing to new accounts would take months to accomplish.

19. The Debtor's relationships with patients, health insurers, Medicare and Medicaid, and employees are essential to its ability to manage the Debtor's operations successfully. The delay, confusion, and disruption that would result if the Debtor were required to substitute new debtor-in-possession bank accounts for each

of the bank accounts would strain the Debtor's relationships.

## Cash Collateral

20. The cash the Debtor seeks to use is or may be claimed as cash collateral by Wells Fargo and Phillips Medical Capital LLC ("**Phillips**"). The Debtor is not aware of any other creditor that claims or may claim a lien or security interest in the cash, cash equivalents, or accounts of the Debtor.

21. According to the 90-day budget attached hereto as **Exhibit A**, the Debtor expects to have cash needs of approximately $3,422,548.00. The Debtor proposes to pay Wells Fargo $27,000.00 and Phillips $5,000.00 in monthly adequate protection payments.

## Employee Compensation

22. The Debtor's current payroll is due to be paid to the employees on November 29, 2013, and covers the pre-petition period from November 10, 2013 through November 19, 2013. The estimated payroll is $166,655.29, which consists of wages, payroll taxes, employee reimbursements, and employee paid insurance premiums.

23. It is necessary for the Debtor to pay these pre-petition wages and salaries, related taxes, and the other contractual amounts required to maintain in place its various employee benefit programs. If they are not paid, these employees will suffer extreme personal hardship and in some cases may be unable to satisfy basic living expenses. Such a result would destroy employee morale and result in immediate and unmanageable employee turnover threatening the Debtor's ability to operate.

## Utilities

24. The utilities companies that have rendered services to the Debtor as of the November 19, 2013 are:

    a. City of Phoenix (water)

    b. Salt River Project; and

c. Southwest Gas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 20th day of November, 2013.

<u>/s/ William J. Comer</u>
William J. Comer

1  COPIES of the foregoing delivered this 20th day of November, 2013 via the Court's CM/ECF system on all parties requesting notice.

COPIES of the foregoing delivered this 20th day of November, 2013 via E-mail to the following:

Larry L. Watson, Esq.
UNITED STATES TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003
Larry.watson@usdoj.gov
*Attorneys for the United States Trustee*

Lori L. Winkelman, Esq.
Jason D. Curry, Esq.
QUARLES & BRADY LLP
Renaissance One
Two North Central Ave.
Phoenix, AZ 85004-2391
Lori.winkelman@quarles.com
Jason.curry@quarles.com
*Attorneys for Wells Fargo Bank, National Association*


/s/ Linda Bourland