1
courtdocs@dickinsonwright.com
Carolyn J. Johnsen (#011894)
2
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Ste. 1400
3
Phoenix, Arizona 85004
Phone: (602) 285-5000
4
Fax: (602) 285-5100
cjjohnsen@dickinsonwright.com
5
*Attorneys for the Debtor*
6
7
## IN THE UNITED STATES BANKRUPTCY COURT
8
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC, | No. 2:13-bk-20029-DPC |
| Debtor. | **ORDER CONFIRMING DEBTOR'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED: OCTOBER 8, 2014** |
| | Hearing Date: December 17, 2014 |
| | Hearing Time: 3:30 p.m. |

This matter came before the Court on December 17, 2014, at 3:30 p.m. for hearing (the **"Confirmation Hearing"**) on confirmation of the *Debtor's Amended Chapter 11 Plan of Reorganization Dated: October 8, 2014* [Dkt. #473] (the **"Plan").** Surgical Specialty Hospital of Arizona, LLC (the **"Debtor"**) appeared through its counsel, Carolyn J. Johnsen of Dickinson Wright PLLC; Wells Fargo Bank, National Association, appeared through its counsel Jason Curry of Quarles & Brady LLP; the Official Committee of Unsecured Creditors ("**Committee"**) appeared through its counsel, Bradley A. Cosman of Perkins Coie; Surgical Care Affiliates, LLC, appeared through its counsel, Jay R. Bender of Bradley Arant Boult Cummings LLP and Scott Brown of Lewis Roca Rothgerber LLP; and the United States Trustee (the **"UST"**) appeared through counsel Larry L. Watson**.**

1

Based upon the evidence and argument presented at the Confirmation Hearing, including without limitation, the Declaration of David Gonzales (the "**Gonzales Declaration**") and the Declaration of Andrew Rosen (the "**Rosen Declaration**"), together with the entire record before the Court, and good cause appearing, the Court makes the findings of fact and conclusions of law set forth below. To the extent that any provision designated herein as a finding of fact should properly be characterized as a conclusion of law, it is adopted as such. To the extent that any provision designated herein as a conclusion of law should properly be characterized as a finding of fact, it is adopted as such.[1]

### THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:

1.      On November 19, 2013, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property as a debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108. This Court has jurisdiction over the Debtor's Chapter 11 Case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

2.      The Debtor filed its Plan and *Amended Disclosure Statement in Support of Debtor's Chapter 11 Plan of Reorganization Dated October 8, 2014* (**"Disclosure Statement"**) on October 8, 2014 [Dkt. 474]. The Disclosure Statement was approved by

---

[1] Capitalized terms not otherwise defined herein are those set forth in the Plan and Disclosure Statement.

the Court's *Order Approving Disclosure Statement in Support of Debtor's Chapter 11 Plan of Reorganization* [Dkt. #471] (the **"Disclosure Order"**), and the Court set the Confirmation Hearing.

3.      As evidenced by the *Certificates of Service* filed on October 15, 2014and November 5, 2014 [Dkt. Nos. 490, 507, 508, 509, 510, 511 and 512], the Plan, Disclosure Statement, Disclosure Order, *Notice of Non-Voting Status With Respect to Unimpaired Claims or Unclassified Claims Deemed to Accept the Debtor's Chapter 11 Plan of Reorganization Dated: August 29, 2014*; and Letter of Support from counsel for the Committee supporting confirmation of the Plan, were sent to all Creditors, Interest Holders, and parties in interest in the Chapter 11 Case.

4.      The only objection to confirmation of the Plan was filed by the Maricopa County Treasurer (the "**Treasurer**"). The Debtor and the Treasurer have agreed to include language in this Confirmation Order as reflected in paragraph 7 below thus resolving the objection.   Therefore, the objection is withdrawn and otherwise overruled.

5.      The Plan provides for eight (8) classes of Allowed Creditors and Interests (the "**Classes**").  All Classes are unimpaired, are not entitled to vote on the Plan, and are deemed to have accepted the Plan.

6.      The Plan Trustee will not object to the specific Allowed Claims of Owens & Minor Distributions, Inc. as set forth in the Stipulated Order dated February 28, 2014 [Dkt. # 132].

7.      To resolve the objection of the Treasurer, the Debtor has agreed that the Treasurer will have an Allowed Secured Claim for personal property taxes in the amount of $24,295.08 as of November 30, 2014 plus any statutory interest that accrues thereafter and that the Treasurer will be paid its Allowed Secured Claim in full by the Plan Trustee

3

on the Effective Date or as soon thereafter as is reasonably practicable. To secure the amount of its Allowed Secured Claim and any Claim the Treasurer has for taxes accruing post-petition, the Treasurer shall have and retain a Lien on the Plan Trust Assets until such Claims are paid in full by the Plan Trust.

8.     Notwithstanding anything to the contrary set forth in the Plan or this Order, (i) Wells Fargo Bank shall have Allowed Class 2 and Class 3 Claims in the total aggregate amount of $7,000,000 (the "Wells Fargo Claim Amount"), and such claims shall not be subject to objection by any person, including the Plan Trustee, (ii) Wells Fargo Equipment Finance Inc. shall have an Allowed Class 4 Claim in the total amount of $135,357.45 (the "WFEFI Claim Amount"), and such claim shall not be subject to objection by any person, including the Plan Trustee, (iii) the Plan Trustee shall indefeasibly pay the Wells Fargo Claim Amount to Wells Fargo Bank and the WFEFI Claim Amount to Wells Fargo Equipment Finance Inc. on or before the Effective Date, or as soon thereafter as is reasonably possible, via wire transfer pursuant to wire transfer instructions provided to the Plan Trustee prior to the Effective Date. The Debtor and the Plan Trustee shall request that SCA, in partial payment of the SCA Plan Contribution, wire directly to Wells Fargo Bank on the Effective Date the Wells Fargo Claim Amount and the WFEFI Claim Amount, with such amounts to be credited against the SCA Plan Contribution. Upon full, timely, and indefeasible payment of the Wells Fargo Claim Amount, Wells Fargo will promptly take actions necessary to effectuate a release of its liens on any collateral owned by SSHA Building, LLC and the Debtor.

9.     The Definitions previously filed as Exhibit B to the Disclosure Statement (the "**Definitions**") and the Exchange Procedures attached as Exhibit D to the Disclosure Statement (as amended hereby, the "**Exchange Procedures**") are specifically

4

incorporated into the Plan in accordance with the terms of this Confirmation Order.  The following Definitions are clarified, supplemented, and revised as follows:

- The definition of "**Final Net Working Capital**" (#40) is revised to mean "the Debtor's Net Working Capital as of the Effective Date, determined in accordance with Section 2.9 of the Plan"

- The definition of "**Final Net Working Capital Adjustment**" (#41) is revised to provide that such term "has the meaning assigned to such term in Section 2.9 of the Plan"

- The definition of "**SCA Plan Contribution**" (#76) is revised to mean "Cash in the amount of Seventeen Million Dollars ($17,000,000.00), as such amount is adjusted (a) on or after the Effective Date by the Proration and (b) after the Effective Date by the Final Net Working Capital Adjustment."

- The term "Equity Interests" shall have the same meaning as the term "Interests."

- The second sentence of the section titled "Undefined Terms" found on page 2 of the Plan is deleted.

10.    With respect to the Exchange Procedures, the last sentence of the third paragraph of the Exchange Procedures is clarified and revised to read as follows: "Because the Class 8 Retaining Interest Holders are to receive distributions of Reorganized Debtor Interests under the Plan, on each Equity Interests Distribution Date on which any Reorganized Debtor Interests are to be distributed pursuant to Section 1.4(8) of the Plan, the Plan Trustee shall pay to SCA (a) with respect to each and every Class 8 Retaining Interest Holder who elected to receive under the Plan one hundred

5

percent (100%) of his Class 8 distributions in Reorganized Debtor Interests, Cash in an amount equal to the amount of Cash that would have been due to be distributed to such Retaining Interest Holder on such Equity Interests Distribution Date had such Retaining Interest Holder elected to receive one hundred percent (100%) of his distributions in Cash, and (b) with respect to each and every Class 8 Retaining Interest Holder who elected to receive under the Plan fifty percent (50%) of his Class 8 distributions in Reorganized Debtor Interests and fifty percent (50%) of his Class 8 distributions in Cash, Cash in an amount equal to fifty percent (50%) of the amount of Cash that would have been due to be distributed to such Retaining Interest Holder on such Equity Interests Distribution Date had such Retaining Interest Holder elected to receive one hundred percent (100%) of his distributions in Cash."

11. To clarify certain prorations to be made on the Effective Date (collectively, as described below, the "Proration"), the Plan shall provide as follows: "To the extent not prorated on the Effective Date or otherwise provided for in the Plan or in this Confirmation Order (such as the Net Final Working Capital Adjustment or the payment of any Cure amounts), within fourteen (14) days after the Effective Date, the Reorganized Debtor and the Plan Trustee shall prorate as of the Effective Date any amounts with respect to: (a) the Assumed Contracts, but only to the extent the event giving rise to such obligation occurred prior to the Effective Date, or to the extent that any prepayments have been made with respect to the delivery of goods or services for periods ending on or after the Effective Date; (b) ad valorem taxes, if any, on the Property of the Debtor vesting in the Reorganized Debtor on the Effective Date; (c) property taxes, if any, on the Property of the Debtor vesting in the Reorganized Debtor on the Effective Date; and (d) if cut off statements cannot be obtained as of the Effective Date, all utilities servicing any

6

of the Property of the Debtor vesting in the Reorganized Debtor on the Effective Date, including water, sewer, telephone, electricity and gas service, except that payments for ad valorem and property taxes shall initially be determined based on the previous year's taxes and shall later be adjusted to reflect the current year's taxes when the tax bills are finally rendered. The parties shall cooperate to avoid, to the extent legally possible, the payment of duplicate taxes, and each party shall furnish, at the request of the other, proof of payment of any taxes or other documentation which is a prerequisite to avoid payment of a duplicate tax. Any such amounts which are not available within fourteen (14) days after the Effective Date shall be similarly prorated as soon as practicable thereafter. The Plan Trustee shall pay to the Reorganized Debtor, or the Reorganized Debtor shall pay to the Plan Trustee, as the case may be, within ten (10) days after the determination thereof, any unpaid prorated amount attributable to periods prior to, or following, the Effective Date."

12.	The Plan provides that, on the Effective Date, the Debtor's articles of organization and operating agreement shall be amended and restated pursuant to the Amended Articles and the Amended Operating Agreement. Each of the Class 8 Equity Interest Holders has ratified and approved the Amended Articles and the Amended Operating Agreement (as such terms are defined in the Gonzales Declaration) and has executed and delivered the Amended Operating Agreement. The Amended Articles and the Amended Operating Agreement do not provide for the issuance of non-voting equity securities.

13.	The managing member of the Reorganized Debtor shall be SCA-Phoenix, LLC, a Delaware limited liability company and a subsidiary of SCA (the "**Managing Member**"). On or as soon as practicable after the Effective Date, the Managing Member

7

and the other members of the Reorganized Debtor shall elect a six-director Governing Board, with three of such directors to be elected by the Managing Member and the other three directors to be elected by the other equity interest holders in the Reorganized Debtor at such time.

14.     On the Effective Date, pursuant to the Exchange Procedures and otherwise in accordance with the Plan and this Confirmation Order, all Reorganized Debtor Interests shall be deemed immediately and automatically, without further order of the Court, to be issued to and to vest in the Managing Member except for those Reorganized Debtor Interests that are to be distributed to and vest in the Class 8 Equity Interest Holders from time to time under the Plan, this Confirmation Order, and the Exchange Procedures.

15.     The Debtor and/or the Reorganized Debtor will cause the Debtor's books to close for tax purposes as of the Effective Date.  Pursuant to the Plan, the Plan Trust Agreement, the Exchange Procedures, and this Confirmation Order, on and after the Effective Date, the Plan Trustee will make cash Distributions to Creditors, the Interest Holders, and SCA, and will facilitate the distribution of the Reorganized Debtor Interests. Each current member owning an Equity Interest in the Debtor shall be entitled to his or her respective share of pre-Effective Date distributive items of income, deduction, gain, loss or credit in accordance with the Debtor's operating agreement.  Each member owning an Equity Interest in the Reorganized Debtor, on or after the Effective Date, including the Retaining Interest Holders, shall be entitled to his, her or its respective share of all post-Effective Date distributive items of income, deduction, gain, loss or credit in accordance with Reorganized Debtor's operating agreement.

8

16.     As of and after the Effective Date, the Hospital, under the ownership of the Reorganized Debtor, shall continue to be qualified for participation in the Medicare program, holding the same Medicare provider contract as the Hospital does currently, under the same terms and conditions and with all of the applicable payment statuses and attributes thereof.  Without limiting the generality of the foregoing, the Hospital shall retain the "grandfathered" status under the Whole Hospital Exception to the Stark Law.

17.     The rate of interest to be paid to Allowed Claimants in Classes 5 and 6 shall be 0.2 percent per annum based on 365 days.

18.     Consistent with Section 2.6 of the Plan, the amendment to the Building Lease (the "**Building Lease Amendment**") and the guaranty of the Building Lease, as amended (the "**Building Lease Guaranty**"), have been fully negotiated by the Persons that will be parties thereto.  The Building Lease, as the same shall be amended by the Building Lease Amendment, shall be an Assumed Contract, with the Building Lease Amendment to be executed and delivered by the Reorganized Debtor on the Effective Date.

19.     The Plan complies with the provisions of 11 U.S.C. §§ 1122 and 1123.

20.     The Plan complies with the applicable provisions of the Bankruptcy Code.

21.     The Debtor has complied with the applicable provisions of the Bankruptcy Code.

22.     The Plan has been proposed in good faith and not by any means forbidden by law.

23.     The Debtor, its members, attorneys, chief restructuring officer, and financial advisors have acted in good faith in connection with the Plan, this Chapter 11

9

Case, and the formulation and consummation of the Plan, and accordingly, have satisfied 11 U.S.C. § 1125(e).

24.     All payments made or promised by the Debtor for services, costs, or expenses in or in connection with this case, or in connection with the Plan and incident to this case, have been fully disclosed and approved or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court as reasonable.

25.     The Debtor has disclosed the identity and affiliations of all individuals and insiders proposed to serve after confirmation of the Plan as a director, officer, or voting trustee of the Reorganized Debtor or as a successor to the Debtor under the Plan. The Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.  The Plan's provisions with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee are consistent with the interests of Creditors and Interest Holders and with public policy.

26.     Each holder of a claim or interest in the Debtor is deemed to have accepted the Plan or, in any event, will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

27.     The Plan provides for the payment, on or as soon as practicable after the Effective Date, of all administrative and priority claims and expenses, except as the holders of such claims and expenses may have otherwise agreed.

28.     The Plan is feasible and confirmation is not likely to be followed by liquidation.

10

29.    All fees payable under 28 U.S.C. § 1930 have been paid, and the Plan provides for the payment of any unpaid fees on the Effective Date or as they become due.

30.    Neither the Debtor nor the Debtor's Estate is obligated for the payment of any "retiree benefits" as that term is defined in 11 U.S.C. § 1114.

**THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:**

1.    The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case, including, but not limited to, the Confirmation Hearing.

2.    The Plan satisfies the applicable requirements of the Bankruptcy Code, including, without limitation, 11 U.S.C. §§ 1122, 1123, 1125 and 1129.

3.    The notices provided to Creditors, Interest Holders, and other parties in interest in regard to approval of the Disclosure Statement and confirmation of the Plan satisfy the requirements of the Bankruptcy Code, Bankruptcy Rules 2002(b), 3017 and 3018, and the Local Rules. To the extent any provisions of the Plan are modified by this Confirmation Order, no further notice is required.

4.    All Classes in the Plan are conclusively presumed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f).

5.    The Debtor has met its burden of proving all of the elements of 11 U.S.C. § 1129.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

11

A.   The Plan attached as Exhibit A, as modified by this Confirmation Order, is confirmed pursuant to 11 U.S.C. § 1129.

B.   In accordance with Section 7.2 of the Plan, all rights and Causes of Action are fully preserved and the entry of this Confirmation Order shall not have any res judicata or other preclusive effect with respect to any Causes of Action that are not specifically and expressly released by the terms of the Plan. On the Effective Date, all Causes of Action shall vest in the Reorganized Debtor, except for the Plan Trust Causes of Action which shall vest on the Effective Date in the Plan Trust.

C.   Notwithstanding anything to the contrary in the Plan, upon (i) payment of the SCA Plan Contribution to the Plan Trustee, (ii) the execution and delivery of the Building Lease Amendment by both SSHA and the Reorganized Debtor, (iii) the execution of the Amended Operating Agreement by the Managing Member, and (iv) all material consents, authorizations, orders and approvals of (or filings or registrations with) any Government Entity or other party required in connection with the execution, delivery and performance of the Plan having been obtained or made by the Debtor, the Reorganized Debtor, or SCA, the Effective Date shall be deemed to have occurred and the Plan shall be deemed to be substantially consummated.  Upon the occurrence of the Effective Date, the Plan shall immediately be effective and enforceable and deemed binding upon the Debtor, the Committee, the Reorganized Debtor, any entity or Person acquiring or receiving property or a Distribution under the Plan, and any Holder of a Claim against or Equity Interest in the Debtor, including all Governmental Authorities, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not the Claim or Equity Interest is Allowed and, to the fullest extent under applicable law, whether or not such Holder or Entity has accepted the Plan.  The rights,

12

benefits and obligations of any entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, if any, of such entities and Persons.

D.    David Gonzales is approved as the Plan Trustee of the Plan Trust, effective as of the Effective Date.  The Plan Trustee is authorized to execute and implement the Plan Trust Agreement as of the Effective Date.

E.    On the Effective Date, all professionals representing the Debtor, the Estate, the Patient Care Ombudsman, or the Committee shall be terminated from their respective engagements without further Order of this Court. Notwithstanding the termination of the engagements, such professionals are required to file a final fee application in this Chapter 11 Case, and shall retain standing and authority to file objections to any fee applications in this Chapter 11 Case.

F.    The United States Trustee shall file a motion to discharge the Patient Care Ombudsman.  Upon approval by the Court, the Patient Care Ombudsman shall be discharged effective as of the Confirmation Date.

G.    On the Effective Date, and subject to the creation and funding of the Plan Trust in accordance with the Plan, the Plan Trust Agreement, and this Confirmation Order, the Committee shall be dissolved in accordance with Section 7.5 of the Plan.

H.    As of the Effective Date, pursuant to Article III of the Plan and Sections 365 and 1123 of the Bankruptcy Code, each of the executory contracts and unexpired leases listed on Exhibit G to the Disclosure Statement (with all amendments contained therein), as such list has been or may be amended by the Debtor from time to time (as amended, the "**Assumed Contracts**"), shall be assumed, subject to SCA's

13

right to direct the Debtor to amend the list of Assumed Contracts, at any time prior to the Effective Date, to delete any contract or lease from such list and provide for its rejection, or to add any executory contract or unexpired lease to such list and provide for its assumption under the Plan. Notwithstanding the foregoing, the Building Lease, as the same shall be amended by the Building Lease Amendment on the Effective Date, shall be an Assumed Contract under the terms of the Plan. The Debtor shall provide notice of any amendment to the list of Assumed Contracts to the counterparty to such contract or lease in accordance with Article III of the Plan. With respect to all the Assumed Contracts, the Disclosure Statement, as duly amended and noticed by the Debtor from time to time, provided due and proper notice of the Cure amounts due under each such Assumed Contract, and no additional amounts must be paid in connection with the assumption of such Assumed Contracts other than such Cure amounts. All Cure payments shall be paid by the Plan Trust in accordance with the terms of the Plan.

I.       Upon the Effective Date, all Property of the Debtor (including the Debtor's and the Hospital's rights and privileges relating to the Whole Hospital Exception) -- except for the Plan Trust Assets -- shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan. All Liens, Claims, encumbrances, charges, and other interests on, in or to such Property shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan.

J.       Upon the Effective Date, all of the Plan Trust Assets – including the SCA Plan Contribution (including any funds to be paid by SCA or the Managing Member pursuant to the Final Net Working Capital Adjustment and the Proration) -- shall vest in

14

the Plan Trust in accordance with the Plan and Plan Trust Agreement, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan and the Trust Agreement. All Liens, Claims, encumbrances, charges, and other interests on, in or to such Plan Trust Assets shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan and the Plan Trust Agreement. Notwithstanding the foregoing, in accordance with the Plan, the Plan Trust Agreement, the Exchange Procedures, and this Confirmation Order, the Plan Trust shall be solely liable for making all distributions to holders of Allowed Claims under the Plan (including without limitation all Allowed Administrative Claims and all Allowed Cure Claims with respect to the Assumed Contracts), for making all Cash distributions to holders of Allowed Interests under the Plan, for facilitating all distributions of Reorganized Debtor Interests to Class 8 Equity Interest Holders under the Plan, for paying any amounts due to be paid to SCA or the Managing Member on account of the Final Net Working Capital Adjustment and the Proration, and for making all distributions of Cash to SCA on account of the distributions of Reorganized Debtor Interests to Class 8 Equity Interest Holders under the Plan.

K. As of the Effective Date, the Reorganized Debtor may operate the Hospital and the business and may use, acquire, and dispose of its property without supervision or approval by the Bankruptcy Court and free of any restrictions the Bankruptcy Code or the Bankruptcy Rules, and in all other respects as if there was no pending case under any chapter or provision of the Bankruptcy Code. After the Effective Date, the Reorganized Debtor shall have full power and authority to amend the Amended Articles and the Amended Operating Agreement as permitted by applicable non-bankruptcy law, and the members of the Reorganized Debtor may sell, transfer, or otherwise dispose of their

15

respective Reorganized Debtor Interests in accordance with the organizational documents of the Reorganized Debtor then in effect; provided, however, that the Managing Member shall not take any action that would preclude the distribution of those Reorganized Debtor Interests that are be distributed to Class 8 Equity Interest Holders pursuant to the Plan.

L. The Plan Trust Agreement, the Building Lease Amendment, the Amended Articles and the Amended Operating Agreement, and the execution and delivery of each of them, (i) are necessary to implement, effectuate, and consummate the Plan, (ii) are in the best interests of the Debtor, the Debtor's Estate, and the Holders of Claims and Equity Interests, (iii) have been negotiated in good faith and at arm's-length by the Persons who are to be parties to each of such documents, and (iv) are hereby approved. The Debtor, the Reorganized Debtor, the Plan Trustee, and their respective directors, officers, members, agents, attorneys and any other authorized representatives, are hereby authorized and empowered to execute, deliver, file, and record any document, and to take any action, necessary or appropriate to implement, effectuate and consummate the Plan and the transactions contemplated thereby, and to take any or all corporate actions authorized to be taken pursuant to the Plan, and any release, amendment, or restatement of any bylaws (including without limitation any medical bylaws), certificates of incorporation, or other organization documents of the Debtor or the Reorganized Debtor, whether or not specifically referred to in the Plan, without further order of the Court. Any and all documents necessary or appropriate to implement, effectuate, and consummate the Plan that are or may be required to be filed or recorded shall be accepted by the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

16

M.     On the Effective Date, all Equity Interests in the Debtor and all certificates of membership interests, promissory notes, or other instruments evidencing any Claims or Equity Interests, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such Equity Interests, shall be deemed canceled, extinguished, and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtor and the Reorganized Debtor under such Equity Interests, notes, membership certificates, and other agreements and instruments governing such Claims and Equity Interests shall be discharged and become void without the need for further action.  The Holders of or parties to such canceled notes, shares, membership certificates and other agreements and instruments shall have no rights arising from or relating to such notes, shares, membership certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

N.     On the Effective Date, in accordance with the Plan, this Confirmation Order, and the Exchange Procedures (which Exchange Procedures are incorporated by reference in full into this Confirmation Order), all Reorganized Debtor Interests shall be deemed immediately and automatically, without further order of the Court, to be issued to and to vest in the Managing Member, except for those Reorganized Debtor Interests that are to be distributed to Class 8 Equity Interest Holders from time to time under the Plan, this Confirmation Order, and the Exchange Procedures.  The issuance of any security pursuant to the Plan or this Order, including without limitation the Reorganized Debtor's issuance of the Reorganized Debtor Interests, and all other instruments, certificates, and other documents required to be issued or distributed pursuant to the Plan, (a) is authorized under Section 1145 of the Bankruptcy Code as of the Effective

17

Date without further act or action, and (b) are exempt from all applicable federal, state, or local securities laws (and all rules and regulations promulgated thereunder) to the extent provided by 11 U.S.C. § 1145.

O.     Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other lien, mortgage, deed of trust or other security interest, or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale or transfer of any assets of the Debtor or its Estate, and any deeds, bills of sale or assignments executed in connection with the Plan, or this Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the full extent provided for or allowed under section 1146(a) of the Bankruptcy Code.

P.     The discharge and injunction as set forth in Section 7.4 of the Plan is hereby approved, authorized, and effectuated in their entirety, subject only to the occurrence of the Effective Date, and any and all releases and exculpations set forth in Section 7.3 of the Plan are hereby approved, authorized, and effectuated in their entirety, subject only to the occurrence of the Effective Date. Notwithstanding the foregoing, the Plan Trust shall be solely liable for making all distributions to holders of Allowed Claims (including without limitation Allowed Administrative Claims and Allowed Cure Claims with respect to the Assumed Contracts) under the Plan, for making all Cash distributions to holders of Allowed Interests under the Plan, for facilitating all distributions of Reorganized Debtor Interests to Class 8 Equity Interest Holders under the Plan, for paying any amounts due to be paid to SCA or the Managing Member on account of the

18

Final Net Working Capital Adjustment and the Proration, and for making all distributions of Cash to SCA on account of the distributions of Reorganized Debtor Interests to Class 8 Equity Interest Holders under the Plan.

Q.     All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid in accordance with the terms of the Plan.

R.     The Court shall retain jurisdiction over the Plan and over this case and proceedings and other matters arising in or relating to the case as set forth in Article VI of the Plan.

S.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect until the Effective Date.

T.     Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court, is valid and enforceable pursuant to its terms.  The Plan is confirmed in its entirety, as modified by this Confirmation Order, and is hereby incorporated into this Confirmation Order by reference (subject to any provision incorporated by such reference being governed by an express and contradictory provision herein).  To the extent that this Confirmation Order may be deemed to modify the Plan, such modifications are immaterial and do not cause the Plan, as modified, to fail to meet the requirements of Section 1122, 1123 and 1125 of the Bankruptcy Code.  The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the

19

same validity, binding effect and enforceability as if fully set forth in this Confirmation Order. To the extent of any inconsistency between the Plan and the Exchange Provisions, as modified hereby, the terms of the Exchange Provisions, as modified hereby, shall govern. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

U.     This Confirmation Order shall be immediately effective and enforceable upon its entry and shall not be subject to any stay under Bankruptcy Rules 3020(e), 6004(g), or 6006(d), or otherwise.

V.     Pursuant to Bankruptcy Rules 2002(f) and 3020(c), the Debtor shall promptly mail notice of entry of this Confirmation Order to all Creditors, Interest Holders, the United States Trustee, SCA, the Committee, and all other parties in interest by electronic mail or by first class mail, postage prepaid.

W.     The Plan Trustee shall file and serve, as soon as practicable after the Effective Date has occurred, a notice of the Effective Date and of any applicable bar dates (including bar dates for the filing of Administrative Claims and rejection damage claims). The form and substance of such notice shall have been approved by counsel for the Plan Trustee, the Committee and SCA.

**DATED AND SIGNED ABOVE.**

/ / /

/ / /

/ / /

20

APPROVED AS TO FORM AND CONTENT:

**DICKINSON WRIGHT PLLC**

By: /s/ Carolyn J. Johnsen
    Carolyn J. Johnsen
    *Counsel for Debtor*

**QUARLES & BRADY LLP**

By: /s/ Lori L. Winkelman
    Lori L. Winkelman
    Jason D. Curry
    Amy D. Sells
    *Counsel for Wells Fargo Bank, National Association*

**PERKINS COIE**

By: /s/ Bradley A. Cosman
    Bradley A. Cosman
    *Counsel for Official Committee of Unsecured Creditors*

**BRADLEY ARANT BOULT CUMMINGS**

By: /s/ Jay R. Bender
    Jay R. Bender
    *Counsel for Surgical Care Affiliates, LLC*

PHOENIX 59512-1 188973v2

21

# EXHIBIT A

courtdocs@dickinsonwright.com
Carolyn J. Johnsen (#011894)
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100
cjjohnsen@dickinsonwright.com
*Attorneys for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 Proceedings |
|---|---|
| SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC, | No. 2:13-bk-20029-DPC |
| Debtor. | |

# DEBTOR'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## DATED: OCTOBER 8, 2014

### FILED BY: Surgical Specialty Hospital of Arizona, LLC

-1-

**INTRODUCTION**

Surgical Specialty Hospital of Arizona, LLC (the "**Debtor**") submits this plan of reorganization, as it may be amended from time to time (the "**Plan**"), to the Court, the creditors of the Debtor's Estate, and the equity interest owners in the Debtor pursuant to Bankruptcy Code § 1121(a). The Debtor is the "**Plan Proponent**" of the Plan within the meaning of Bankruptcy Code § 1129. Reference is made to the "Disclosure Statement in Support of the Debtor's Chapter 11 Plan of Reorganization" filed contemporaneously with the Plan (the "**Disclosure Statement**"), for a discussion of the Debtor's history, business, property, results of operations, and for a summary and analysis of the Plan and related matters. All holders of claims against and equity interests in the Debtor are encouraged to read the Plan and the Disclosure Statement in their entirety.

**DEFINITIONS**

**Defined Terms**. The terms used in this Plan have the same meaning as those defined in **Exhibit B** to the Disclosure Statement or in the Bankruptcy Code, Rules, or otherwise defined in the Disclosure Statement or Plan.

**Undefined Terms.** Terms and phrases, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Terms and phrases, whether capitalized or not, not defined herein and not defined by the Bankruptcy Code, but which have been defined by motions and orders filed in this Chapter 11 case have the meaning ascribed to them in such motions and orders.

**Rules of Interpretation**. For purposes of this Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan

-2-

to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are to the Sections, Articles, Appendices, Schedules, and Exhibits of or to the Plan; (d) the words "herein" or "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) the headings and captions used in this Plan are for convenience and reference only and are not intended to be a part of or affect the interpretation of the Plan and shall not limit or otherwise affect the provisions hereof; (f) words denoting the singular number shall include the plural number and vice versa; (g) words denoting one gender shall include the other gender; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**Computation of Time**. In computing any period of time prescribed by or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE I**
**CLASSIFICATION OF CREDITORS**

**1.1** **No Classification of Administrative Claims and Priority Tax Claims**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting on or receiving distributions under the Plan. All those Claims shall be treated separately as unclassified Claims on the terms set forth herein.

**1.2** **Administrative Expenses**

Allowed Administrative Claims will be paid in full satisfaction of the Claim, unless previously approved and paid: (a) cash payment in the allowed amount of the Claim on the Effective Date or as soon thereafter as possible or after the claim is allowed if subject to Court approval; (b) in the ordinary course of business as the Claim

matures; or (c) upon other less favorable terms as may be agreed upon in writing by the holder of the Claim and the Plan Trustee (described below), or as ordered by the Bankruptcy Court.

**1.3  Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or treatment is ordered by the Bankruptcy Court, in full and final satisfaction, each holder shall be treated in accordance with the terms set forth in Bankruptcy Code section 1129(a)(9)(C).

**1.4  Classification and Treatment of Claims and Interests That Are Classified**

For purposes of voting, distributions, and all confirmation matters, except as otherwise provided herein all Allowed Claims and Interests shall be classified and treated as follows.

**(1)  Class 1 – Other Priority Claims**

To the extent there are any Allowed Other Priority Claims, they will be paid in full on the Effective Date or such other time as the claimant agrees. The Debtor does not believe there any Claims in this class. To extent there are such Claims, Class 1 is unimpaired, is not entitled to vote on the Plan and will not be solicited for voting.

**(2)  Class 2 – Wells Fargo Bank, N.A. (Loan to the Debtor)**

Class 2 consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. Wells Fargo will be paid its Allowed Secured Claim in full on the Effective Date or as soon thereafter as is reasonably possible. Wells Fargo's Allowed Secured Claim will consist of all amounts appropriately due and owing Wells Fargo under the applicable loan documents and applicable law. The Debtor and/or Plan Trustee reserve their rights to object to whether specific interest, fees and charges are allowable. Wells Fargo will provide to the Debtor an initial

-4-

updated pay-off statement seven (7) days prior to the Confirmation Hearing with a projection of additional interest, costs and fees. Debtor and/or Plan Trustee and Wells Fargo will use their best efforts to resolve any disputes prior to the Confirmation Hearing and will cooperate to obtain a determination from the Court on an expedited basis if they are unable to reach a resolution. In the event that Wells Fargo and the Debtor and/or Plan Trustee cannot resolve their disputes related to specific amounts in the pay-off statement ("Disputed Amounts") prior to the Effective Date, the Plan Trustee shall nevertheless pay all undisputed amounts contained in the pay-off statement on the Effective Date or as soon thereafter as is reasonably possible, and the Plan Trustee shall reserve funds equal to the total of all Disputed Amounts, pending resolution of the dispute. Class 2 is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

**(3)    Class 3 – Wells Fargo Bank, N.A. (Debtor Guarantee Obligation)**

Class 3 consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. with respect to the Debtor's guarantee of the Wells Fargo loan to SSHA. On the Effective Date or as soon thereafter as is reasonably possible, Wells Fargo will be paid its Allowed Secured Claim in full.  Wells Fargo's Allowed Secured Claim will consist of all amounts appropriately due and owing Wells Fargo under the applicable loan documents and applicable law. The Debtor and/or Plan Trustee reserve their rights to object to whether specific interest, fees and charges are allowable. Wells Fargo will provide to the Debtor an initial updated pay-off statement seven (7) days prior to the Confirmation Hearing with a projection of additional interest, costs and fees. Debtor and/or Plan Trustee and Wells Fargo will use their best efforts to resolve any disputes prior to the Confirmation Hearing and will cooperate to obtain a determination from the

Court on an expedited basis if they are unable to reach a resolution. In the event that Wells Fargo and the Debtor and/or Plan Trustee cannot resolve their disputes related to specific amounts in the pay-off statement ("Disputed Amounts") prior to the Effective Date, the Plan Trustee shall nevertheless pay all undisputed amounts contained in the pay-off statement on the Effective Date or as soon thereafter as is reasonably possible, and the Plan Trustee shall reserve funds equal to the total of all Disputed Amounts, pending resolution of the dispute. This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

**(4)    Class 4 – Wells Fargo Equipment Finance, Inc.**

Class 4 consists of the Allowed Secured Claim of Wells Fargo Equipment Finance, Inc.  Wells Finance will be paid its Allowed Secured Claim by the Plan Trustee on the Effective Date or as soon thereafter as is reasonably possible. The Wells Finance Allowed Secured Claim will consist of all amounts appropriately due and owing Wells Finance under the applicable loan documents and applicable law. The Debtor and/or Plan Trustee reserve their rights to object to whether specific interest, fees and charges are allowable. Wells Finance will provide to the Debtor an initial updated pay-off statement seven (7) days prior to the Confirmation Hearing with a projection of additional interest, costs and fees. Debtor and/or Plan Trustee and Wells will use their best efforts to resolve any disputes prior to the Confirmation Hearing and will cooperate to obtain a determination from the Court on an expedited basis if they are unable to reach a resolution.  In the event that Wells Fargo and the Debtor and/or Plan Trustee cannot resolve their disputes related to specific amounts in the pay-off statement ("Disputed Amounts") prior to the Effective Date, the Plan Trustee shall nevertheless pay all undisputed amounts contained in the pay-off statement on

-6-

the Effective Date or as soon thereafter as is reasonably possible, and the Plan Trustee shall reserve funds equal to the total of all Disputed Amounts, pending resolution of the dispute. This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

### (4)(A) – Phillips Medical Capital, LLC

Class 4(A) consists of the Allowed Secured Claim of Phillips Medical Capital, LLC ("Phillips"). On the Effective Date or as soon thereafter as is reasonably practical, the Plan Trustee will pay Phillips its Allowed Secured Claim in the amount of $277,666.28, adjusted by the application of adequate protection payments made during the case. This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

### (4)(B) – Med One Capital Funding, LLC

Class 4(B) consists of the Allowed Secured Claim of Med One Capital Funding, LLC ("Med One") in the amount of $24,404.76, as adjusted by the application of payments made during the case, which amount will be paid in full by the Plan Trustee on the Effective Date or as soon thereafter as is reasonably practical. This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

### (5)     Class 5 – General Unsecured Creditors

Class 5 consists of the Allowed Unsecured Claims of general unsecured creditors not otherwise classified. Each holder of an Allowed Unsecured Claim in this class will be paid in full on the Effective Date of the Plan or as soon thereafter as is reasonably possible. Each Allowed Unsecured Claim will accrue and be paid interest from the Filing Date until the Effective Date at the Federal Judgment Rate. This Class is unimpaired, is not entitled to vote on the Plan and will not be solicited for voting.

**(6)    Class 6 – SSHA Building, LLC**

Class 6 consists of the Allowed Unsecured Claim of SSHA Building, LLC. SSHA will be paid in full on the Effective Date of the Plan or as soon thereafter as is reasonably possible. The Allowed Unsecured Claim of SSHA will accrue and be paid interest from the Filing Date until the Effective Date at the Federal Judgment Rate. This Class is unimpaired, is not entitled to vote on the Plan and will not be solicited for voting.

**(7)    Class 7 – Equity Interests of Non-retaining Members**

Class 7 consists of the Equity Interests of the Debtor's current members who are not retaining an interest in the Reorganized Debtor. Members of this Class are as follows: Dr. Ali Araghi, Dr. John De Barros, Dr. Paul Gause, Dr. Stephen Hochschuler, Dr. Daniel Lieberman, Dr. Richard Maxwell, Dr. Michael Orris, Dr. Michael Winer, and Dr. Anthony Yeung. They will be treated as follows: The Plan Trustee will first pay or withhold from the Plan Trust Assets a) all Allowed Claims as provided in the Plan; b) the Final Net Working Capital Adjustment if necessary according to Article VIII; c) sufficient Cash Reserves for the payment of Disputed Claims and Plan Trust administrative expenses. The Plan Trustee will then calculate the amount of Cash in the Plan Trust available to be distributed to all Interest Holders and each Interest Holder's share of such amount based on their percentage ownership in the Debtor as identified on Exhibit C to the Disclosure Statement. ("**Equity Distribution**"). Thereafter, and as soon as reasonably practical, the Plan Trustee will pay to each Class 7 Equity Interest Holder in Cash his initial Equity Distribution as calculated. In the event additional funds become available, the Plan Trustee will make additional distributions accordingly. On the Effective Date, Class 7 Equity Interests will be cancelled. All distributions made in accordance with this

-8-

paragraph shall be deemed to be estimate of the Cash to be distributed to the members of Class 7 for all purposes (including tax purposes) until the final amounts are determined as of the date that the Plan Trust liquidates.) This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

**(8)    Class 8– Equity Interests of Retaining Members**

Class 8 consists of the interests of the Debtor's current members who have elected one of two options: (i) to exchange 100 percent (100%) of their Interests in the Debtor for an equity position in the Reorganized Debtor; or (ii) to exchange 50 percent (50%) of their Interests for an equity position in the Reorganized Debtor plus 50 percent (50%) in Cash. The members of this Class and their elections are as follows: Dr. Charles Creasman (100 % Interest), Dr. Steven Kassman (50 percent Interest, 50% Cash, Dr. Christopher Yeung (50% Interest, 50% Cash), Dr. Edward Dohring (50% Interest, 50% Cash), Dr. Jonathan Landsman (50% Interest, 50% Cash), Dr. Justin Field (100 % Interest).

From the Effective Date through and including Friday, March 13, 2015, (A) any distributions to Class 8 Equity Interest Holders who elect the 100% Reorganized Debtor Interests option will be made in the form of Reorganized Debtor Interests and (B) any distributions to Class 8 Equity Interest Holders who elect the 50% Reorganized Debtor Interests and 50% Cash option will be made 50% in Reorganized Debtor Interest and 50% in Cash.  All distributions of Reorganized Debtor Interests will be deemed made as of the Effective Date and made in accordance with the Exchange Procedures attached as **<u>Exhibit D</u>** to the Disclosure Statement.  At any time that Reorganized Debtor Interests are distributed to a Class 8 Equity Interest Holder, the Plan Trustee will make a contemporaneous payment of Cash to SCA in an amount equal to the value of

the Reorganized Debtor Interests distributed to the Class 8 Equity Interest Holder. After March 13, 2015, any and all distributions to Class 8 Equity Interest Holders will be made in Cash in the same manner as distributions of Cash are made to Holders of Class 7 Equity Interests. On the Effective Date, Class 8 Equity Interests in the Debtor will be cancelled. All distributions made in accordance with this paragraph shall be deemed to be estimates of the final Reorganized Debtor Interests and Cash to be distributed to the members of Class 8 for all purposes (including tax purposes) until the final amounts are determined as of the Effective Date or the date that the Plan Trust liquidates, as the case may be. This Class is unimpaired, is not entitled to vote on the Plan, and will not be solicited for voting.

**ARTICLE II**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**2.1    Payment of the SCA Plan Contribution**

On the Effective Date, SCA will pay to the Plan Trustee the SCA Plan Contribution in the amount of $17,000,000, (subject to various adjustments all as defined in Exhibit B Definitions) to the Plan Trustee, to be used, along with other assets in the Plan Trust, to fund the Debtor's obligations under the Plan.

**2.2    Continued Corporate Existence**

After the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

-10-

**2.3    Corporate Governance**

On the Effective Date, the Debtor's articles of organization and operating agreement shall be amended and restated pursuant to the Amended Articles and the Amended Operating Agreement, respectively, to reflect the transactions consummated by the Plan, including the issuance of all the Reorganized Debtor Interests to SCA or a subsidiary of SCA (except for the Reorganized Debtor Interests to be issued to the holders of Allowed Class 8 Interests in accordance with the Plan) and the appointment of SCA or a subsidiary of SCA to serve as the managing member of the Reorganized Debtor, and to incorporate such other terms and conditions acceptable to the Reorganized Debtor and SCA.

The Amended Articles and the Amended Operating Agreement satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Bankruptcy Code § 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Bankruptcy Code § 1123(a)(6).

After the Effective Date, the Reorganized Debtor may amend and restate the Amended Articles and the Amended Operating Agreement as permitted by applicable law.

**2.4    Management**

Subject to any requirement of Bankruptcy Court approval pursuant to Bankruptcy Code § 1129(a)(5), on the Effective Date, the new managing member, the new officers, and the new governing board of the Reorganized Debtor will be appointed, with the identities of such persons to be disclosed prior to Confirmation. Each such managing members officer, and board member will serve from and after the

-11-

Case 2:13-bk-20029-DPC    Doc 566    Filed 10/08/14    Entered 10/08/14 14:39:38    Desc
Main Document    Page 33 of 76

Effective Date in accordance with the Amended Articles, the Amended Operating Agreement, and other governance policies of the Reorganized Debtor, as the same may be amended from time to time.

On the Effective Date, SCA or one of its subsidiaries will enter into a Management Agreement with the Reorganized Debtor to, among other things, manage the Reorganized Debtor's business and assets, including the hospital.

## 2.5 Cancellation of Debtor's Equity Interests.

On the Effective Date, all outstanding Interests in the Debtor shall be cancelled and extinguished and all certificates (if any) representing Interests in the Debtor shall become void without the need for further action.

## 2.6 Modification of the Building Lease

The Building Lease shall be extended to provide for a 15-year term commencing on the Effective Date, subject to the Reorganized Debtor's option during the tenth year of the extended term to terminate the Building Lease effective as of the end of the tenth year of the extended term. Pursuant to Court order, the Debtor is holding certain funds owed to SSHA under the Building Lease and has not paid certain real estate taxes. This matter will be reconciled in the modification. Such modification of the Building Lease shall be made in full satisfaction of all Claims that SSHA has or may have against the Debtor as of the Effective Date with respect to the Building Lease. The Building Lease as modified shall be guaranteed on a limited basis by each member of the Reorganized Debtor, with each member's guarantor liability for the Reorganized Debtor's obligations under the Modified Lease limited by such member's percentage membership interest in the Reorganized Debtor. A form of the guarantee will be filed prior to Confirmation.

-12-

**2.7     Retention of Grandfathered Status under the Whole Hospital Exception**

As of and after the Effective Date, the Hospital, under the ownership of the Reorganized Debtor, shall continue to be qualified for participation in the Medicare program, holding the same Medicare provider contract as the Hospital does currently, under the same terms and conditions and with all of the applicable payment statuses and attributes thereof. Without limiting the generality of the foregoing, the Hospital shall retain the "grandfathered" status under the Whole Hospital Exception to the Stark Law.

**2.8     Creation of Plan Trust and Appointment of Trustee**

On the Effective Date a Plan Trust will be created pursuant to the Plan Trust Agreement (in a form substantially the same as **Exhibit A** to this Plan, the terms of which are incorporated by reference) to facilitate all distributions required by the Plan and other functions required to wind-down the Debtor's Estate. On the Effective Date, the SCA Plan Contribution, funds released from the Final Net Working Capital Adjustment, and any Causes of Action (the "**Plan Trust Assets**") will be transferred to the Plan Trust and will be used to pay Allowed Claims and Interests after the payment or reservation for the expenses of administering the Plan Trust, including the winding down and closing of the bankruptcy case and all necessary administrative and professional fees and costs.

The Initial Plan Trustee will be David Gonzales who has served since January 2014 as the Debtor's Chief Restructuring Officer. Mr. Gonzales will be deemed appointed on the Effective Date, without further motion, application, notice, hearing or other order of the Court. Mr. Gonzales will be compensated as set forth in the Plan Trust Agreement. Mr. Gonzales' resume is attached as **Exhibit F** to the Disclosure Statement.

-13-

As more fully described in the Plan Trust Agreement, the Plan Trustee shall have the rights and powers of a debtor in possession under Bankruptcy Code section 1107, and such other rights, powers, and duties necessary, appropriate, prudent or advisable to effectuate the provisions of the Plan and the Plan Trust, including but not limited to objecting to claims and making distributions to creditors and interest holders. The Plan Trustee shall not be required to obtain any approvals from the Court, any court or governmental body and/or provide any notices under any applicable laws to implement the terms of the Plan in accordance with the Plan and the Plan Trust Agreement except as expressly set forth in the Plan and the Plan Trust Agreement.

The Plan Trust may employ, without order of the Court such counsel (which may be the same counsel employed by the Debtor), advisors and other professionals selected by the Plan Trustee that are reasonably required to perform the Plan Trustee's responsibilities under the Plan. The Plan Trust's professionals shall be compensated at their respective standard hourly rates as agreed to by the Plan Trustee, without further motion, application notice, or other order of the Court. The fees and expenses of the Plan Trust's professionals shall be satisfied from the Plan Trust assets.

**2.9** **Final Net Working Capital Adjustment**.

The SCA Plan Contribution shall be subject to adjustment after the Effective Date to reflect the Final Net Working Capital. The Final Net Working Capital shall be determined in the following manner. No later than fourteen (14) days after the Effective Date, SCA shall deliver to the Plan Trustee its determination of the Final Net Working Capital as of the Effective Date, following generally accepted accounting principles. The Plan Trustee shall have full access to the financial books and records pertaining to the Hospital to confirm or audit SCA's Final Net Working Capital

-14-

computations. Should the Plan Trustee disagree with SCA's determination of the Final Net Working Capital, the Plan Trustee shall notify SCA within seven (7) days after the SCA's delivery of its determination of the Final Net Working Capital. If SCA and the Plan Trustee fail to agree within seven (7) days after the Plan Trustee's delivery of notice of disagreement on the amount of the Final Net Working Capital, such disagreement shall be resolved by submitting such dispute to an independent certified public accounting firm mutually acceptable in writing to both SCA and the Plan Trustee, whereupon such accounting firm shall review the matters in dispute and, acting as arbitrators, promptly shall decide the proper amounts of any disputed entries (which decision shall also include a final calculation of the Final Net Working Capital). The submission of any dispute to such a mutually acceptable accounting firm shall be the sole and exclusive remedy for resolving accounting disputes relative to the determination of Final Net Working Capital.

Once the Final Net Working Capital has been determined and fixed, the SCA Plan Contribution shall be (a) increased if and to the extent there is a positive difference between the Final Net Working Capital minus the Net Working Capital Target, or (b) decreased if and to the extent there is a negative difference between the Final Net Working Capital minus the Net Working Capital Target (in each case, the "**Final Net Working Capital Adjustment**"), and within five (5) Business Days after the final determination thereof, any increase shall be paid in Cash by SCA to the Plan Trust, and any decrease shall be paid in Cash by the Plan Trustee from the Plan Trust to SCA.

**2.10    Effectuating Documents; Further Transactions**

Upon Confirmation, the Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents

-15-

and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**2.11    Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the creation or transfer of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, and executed in connection with the liquidation of assets shall not be subject to any stamp tax, real estate tax or similar tax.

**2.12    Exemption from Securities Laws**

The issuance of the Reorganized Debtor Interests, and all other instruments, certificates, and other documents required to be issued or distributed pursuant to the Plan, (a) shall be authorized under Bankruptcy Code § 1145 as of the Effective Date without further act of action, except as may be required by the Amended Articles and the Amended Operating Agreement, and (b) shall be exempt pursuant to Bankruptcy Code § 1145 from registration under the Securities Act of 1933, as amended (and all rules and regulations promulgated thereunder), and under any state or local law (and all rules and regulations promulgated thereunder) requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.

**2.13    Tail Insurance**

On or after the Effective Date, the Reorganized Debtor shall, at the Reorganized Debtor's sole cost and expense, obtain "tail" insurance to insure against professional liabilities of the Debtor and the Hospital (including any employed physicians of the

-16-

Debtor) relating to all periods prior to the Effective Date. The "tail" insurance shall be for a period of two (2) years, have coverage levels equal to the current policies insuring the Debtor and the Hospital, and name the Plan Trust, the Reorganized Debtor and SCA as additional named insureds.

## ARTICLE III
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Subject to the approval of the Bankruptcy Court, the Debtor has the power to assume or reject an unexpired lease or a contract that is deemed executory by the fact that performance is due by both parties to the contract. That is to say, the lease or contract can be accepted as written and the parties continue as if the bankruptcy never occurred. In such case the Debtor must cure any arrearages ("**Cure**") and give the counter party adequate assurance of performance. Conversely, the lease or contract can be rejected, in which case the Debtor is deemed to be in breach of the agreement, and practically speaking, the parties' obligations cease. The counter party may have a claim for damages as a consequence of the rejection.

In this case, the Debtor will assume as of the Effective Date the contracts identified on **Exhibit G** to the Disclosure Statement (the "**Assumed Contracts**"). Exhibit G identifies the Cure associated with each Assumed Contract. All other executory contracts and unexpired leases not listed on Exhibit G shall be deemed rejected on Effective Date (the "**Rejected Contracts**") unless earlier rejected by Bankruptcy Court order. The Debtor reserves the right to amend, with the consent of SCA, Exhibit G at any time prior to the Effective Date (a) to delete any executory contract or unexpired lease and provide for its rejection, or (b) to add any executory contract of unexpired lease and provide for its assumption under the Plan. The Debtor

-17-

will provide notice of any amendment to Exhibit G to the counter party or parties to those agreements affect by the amendment.

Each counter party to an Assumed or Rejected Contract shall have fourteen (14) days from the date of the notice of the Disclosure Statement to file with the Bankruptcy Court a written objection to its treatment and its Cure if applicable. Failure to timely object will be deemed consent to the treatment and Cure. If a timely written objection is filed, the Debtor will request a hearing for the resolution of the counter party's objection.

Unless it has done so previously, each counter party to a rejected lease or contract shall file on or before fourteen (14 days) after the Effective Date a proof of claim for any rejection damages. Failure to timely file such proof of claim will result in the establishment of the claim at zero dollars (-0-). The Plan Trustee reserves all rights to object to any proofs of claim.

## ARTICLE IV

## CLAIMS, DISTRIBUTIONS, AND CLAIMS OBJECTIONS

### 4.1     Deadline for Applications for Administrative Expenses

Applications for Administrative Claims shall be filed no later than 30 days after the Effective Date. If Administrative Claims are not timely filed in accordance with the Plan, they will be forever barred and may not be asserted in any manner; provided, however, that no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims for expenses incurred in the ordinary course of business, unless a dispute exists as to those expenses, or unless the provisions of the Bankruptcy Code require approval or

-18-

allowance by the Bankruptcy Court as a precondition to payments being made on that expense.

**4.2     Filing of Objections**

The Plan Trustee shall have the exclusive right to file objections to Claims and the exclusive right to settle or withdraw those objections with respect to any claims totaling $100,000 or less. With respect to claims of larger amounts, the Plan Trustee shall seek approval of the Court upon notice to those creditors or parties entering a notice of appearance in the case. The holder of a Claim to which an objection has been filed will be required to file with the Bankruptcy Court a response setting forth its Claim with specificity. The Plan Trustee will request a hearing on any timely filed responses.  Claims objections must be filed within 90 days after the Effective Date.

**4.3     Plan Distributions and Disbursing Agent**

Distributions to Creditors and Interest Holders will be made in accordance with the Plan and the Plan Trust Agreement.  No distributions will be made to any claimant unless that claimant has an Allowed Claim or Allowed Interest.  On the Effective Date, the Plan Trustee will establish a **Disputed Claims Reserve** in an amount sufficient to pay any unresolved claims in full if and when they are allowed.  No interest shall accrue or be paid for any amounts reserved and ultimately paid. The Plan Trustee will serve as the disbursing agent for all Allowed Claims and Interests.

**4.4     Amendment of Claims**

A Claim may be amended prior to the Effective Date only as agreed upon by the Plan Trustee and the holder of the Claim or as otherwise permitted by the Bankruptcy Court and Bankruptcy Rules.  After the Effective Date, a Claim may be amended to decrease, but not to increase, the amount thereof.

-19-

**4.5     Full and Final Satisfaction**

All payments and distributions under the Plan shall be in full and final satisfaction, settlement, release, and discharge of all Claims and Interests.

## ARTICLE V
## CONDITIONS TO CONFIRMATION

**5.1     Conditions to Confirmation**

The following are conditions precedent to the Effective Date:

(a)     The Confirmation Date has occurred;

(b)     The Confirmation Order in form and substance acceptable to the Debtor and SCA has been entered and is a Final Order, except that the Debtor and SCA reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

(c)     No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, if made, remains pending;

(d)     The Retaining Interest Holders and their respective spouses have executed and delivered the Amended Operating Agreement;

(e)     No Material Adverse Event shall have occurred and be continuing;

(f)     All material consents, authorizations, orders and approvals of (or filings or registrations with) any Government Entity or other party required in connection with the execution, delivery and performance of the Plan shall have been obtained or made by the Debtor, the Reorganized Debtor, and/or SCA when so required, except for any documents required to be filed, or consents, authorizations, orders or approvals required to be issued, after the Effective Date;

(g)     The Building Lease shall have been duly amended and executed; and

(h)     The Effective Date shall have occurred by December 31, 2014.

-20-

**5.2** **Waiver of Conditions**

The conditions to Confirmation and the Effective Date may be waived in whole or in part by the Debtor and SCA in writing at any time without notice, or by an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

**ARTICLE VI**
**RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Case for, among other things, the following purposes:

(a)     To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

(b)     To hear and determine any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and determine all matters with respect to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

(d)     To ensure that distributions to holders of Allowed Claims or Allowed Interests are accomplished as provided in the Plan;

(e)     To hear and determine all applications for compensation and reimbursement of Professional Fee Claims;

(f)     To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, this Disclosure Statement or any order of the

Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated by the Plan or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)    To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(i)    To issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

(j)    To enter, implement or enforce orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(k)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)    To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

(m)    To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan documents or any other contract, instrument, release or other agreement or document related to the Plan and the Disclosure Statement;

(n)    To recover all Property of the Debtor's Estate, wherever located and whether vesting in the Reorganized Debtor or the Plan Trust pursuant to the Plan;

-22-

(o)     To hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(p)     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor or the Reorganized Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(q)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 Case with respect to any Person;

(r)     To hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of any post-petition agreements;

(s)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(t)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE VII
## EFFECT OF CONFIRMATION

**7.1     Vesting of Assets**

Upon the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor and of the Estate, (including the Debtor's and the hospital's right and privileges relating to the Whole Hospital Exception), except for the Plan Trust Assets, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan.  As of the Effective Date, the Reorganized Debtor may

-23-

operate the business and may use, acquire, and dispose of Property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there was no pending cases under any chapter or provision of the Bankruptcy Code.

Upon the Effective Date, the Plan Trust Assets shall vest in the Plan Trust in accordance with the Plan and Plan Trust Agreement free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan and the Plan Trust Agreement. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released and discharges as of the Effective Date except as otherwise provided in the Plan and the Plan Trust Agreement.

**7.2    Preservation of Causes of Action**

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtor, the Reorganized Debtor, or the Plan Trust may have or choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, and including without limitation any crossclaim, counterclaim, and/or claim for setoff that seeks affirmative relief against the Debtor, the Reorganized Debtor, the Plan Trust or its officers, directors or representatives. All Causes of Action shall vest on the Effective Date in the Reorganized Debtor, except for the Plan Trust Causes of Action which shall vest on the Effective Date in the Plan Trust.

**7.3    Exculpation and Release**

Pursuant to the Plan, the Debtor, the Committee, SCA, the Reorganized Debtor, and the PCO and all of their  respective present and former partners, members, officers, directors, employees, advisors, attorneys and agents (collectively, the "Released

-24-

Parties") shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of this Chapter 11 Case, any settlement related to this Chapter 11 Case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the Property to be distributed under the Plan, except only to the extent that liability is based on willful misconduct. The Released Parties shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the Chapter 11 Case.

No other releases of third parties are intended by this Plan.

**7.4    Discharge and Injunction**

Except as otherwise specifically provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims, and shall terminate all interests of any kind, nature, or description whatsoever against or in the Reorganized Debtor or any of its assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as otherwise specifically provided in the Plan or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtor and interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests (and all representatives, trustees, or agents on behalf of each holder) shall be precluded and enjoined from asserting against the

-25-

Debtor, the Reorganized Debtor, the Plan Trust, the Plan Trustee, SCA, their respective successors or assignees, or any of their assets or properties, any other or further Claim or Interest based on any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, whether or not the holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed before the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, liabilities of, and Interests in the Debtor, subject to the occurrence of the Effective Date.

Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of the holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date. Upon the Effective Date, all those Persons shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Interest in the Debtor.

Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold, or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives, and Affiliates, are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (ii) the enforcement, attachment,

-26-

collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, SCA, the Plan Trust or Trustee or Property of the Debtor; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor, the Reorganized Debtor, SCA, the Plan Trust or Trustee, or against the Property or interests in Property of the Debtor; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor the Reorganized Debtor, SCA, the Plan Trust or Trustee, or against the Property or interests in Property of the Debtor, with respect to any such Claim or Interest.  This injunction shall extend to any successors or assignees of the Debtor, Debtor, the Reorganized Debtor, SCA, the Plan Trust or Trustee, and their respective Properties and interests in Properties.

**7.5** **Dissolution of Committee.**

On the Effective Date, (a) the Committee shall dissolve and its members shall be released of their respective duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the Committee's respective professionals and agents shall be terminated, other than with respect to filing the Committee's final fee application.

**7.6** **Discharge of Patient Care Ombudsman.**

On the Effective Date, (a) the PCO shall be released and discharged of all her duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the PCO's professionals and agents shall be terminated, other than with respect to filing the PCO's final fee application.

-27-

**7.7**     <u>Corporate Authority</u>.

The Confirmation Order shall constitute full and complete corporate authority for the Debtor, the Reorganized Debtor, and the Plan Trustee to take all other actions that may be necessary, useful or appropriate to consummate the Plan without any further corporate or judicial authority.

**7.8**     <u>Setoff and Recoupment</u>

The Plan Trust may, but shall not be required to, set off or recoup against any Claim and any distribution to be made on account of that Claim, any and all claims, rights, and Causes of Action of any nature that the Plan Trust may have against the holder of that Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effect a set off or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver, abandonment, or release by the Plan Trust of any of those claims, rights, and Causes of Action that the Plan Trust may have against the holder of the Claim. To the extent the Plan Trust fails to setoff or recoup against a holder and seek to collect a claim from that holder after a distribution to the holder pursuant to the Plan, the Plan Trust shall be entitled to full recovery on its claim against that holder of a Claim.

**ARTICLE VIII**
**<u>MISCELLANEOUS PROVISIONS</u>**

**8.1**     <u>Binding Effect of Plan</u>

The provisions of this Plan shall bind the Debtor, Creditors, and any Interes Holders, and shall bind any Person asserting a Claim against the Debtor or an Interest in the Debtor, whether or not the Claim or Interest arose before or after the Petition Date or the Effective Date, whether or not the Claim or Interest is impaired, and whether or not the Person has accepted the Plan.

-28-

**8.2      Appeals**

In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof to implement the Plan.

**8.3      Modification and Amendment of Exhibits, Schedules, and Appendices**

The Debtor may modify or amend the terms of any document or agreement that is an Exhibit, schedule or appendix to the Plan without the need for re-solicitation of votes with respect to the Plan; provided, however, that the modification or amendment does not materially adversely affect the rights of any Person provided in the Plan, and provided further however, that prior notice of the modification or amendment shall be served in accordance with the Bankruptcy rules or any order of the Bankruptcy Court.

**8.4      Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arizona.

**8.5      Headings**

The headings of the Articles, Sections and Subsections of the Plan are inserted for convenience only and shall not limit the interpretation of the Plan.

**8.6      Amendment and Modification of the Plan**

The Debtor, with the consent of SCA, may propose amendments to or modifications of the Plan at any time prior to confirmation of the Plan without the leave of the Bankruptcy Court or as permitted by the Bankruptcy Code or Bankruptcy Rules.

After confirmation of the Plan, the Debtor may amend or modify the Plan, with the approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of Creditors or other parties in interest as set forth herein, to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, in a manner as may be necessary to carry out the purposes and intent of the Plan.

**8.7    Withdrawal of Plan**

The Plan may be withdrawn or revoked prior to the entry of the Confirmation Order at the sole discretion of the Debtor with the consent of SCA.

**8.8    Effect of Confirmation Order**

The Confirmation Order will include a provision that the Confirmation Order shall be immediately effective and enforceable upon its entry and shall not be subject to any stay under Bankruptcy Rule 3020(e) or otherwise**.**

**8.9    Quarterly Fees**

The quarterly fees required by 28 U.S.C. § 1930(a)(6) will be paid by the Plan Trust to, and reports will be filed with, the Office of the United States Trustee until application is made for entry of a final decree.  Application for a final decree can be made when the Plan has been fully administered, which for purposes of the Plan shall mean when the Plan has been substantially consummated, as that term is defined in § 1101(2) of the Bankruptcy Code.

DATED: October 8, 2014.

SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC

By: /s/ David Gonzales
     Chief Restructuring Officer

PHOENIX 59512-1 166795v1

-30-

# EXHIBIT A

# PLAN TRUST AGREEMENT - TABLE OF CONTENTS

**Page No.**

**ARTICLE I: DECLARATION OF TRUST** ..................................................... 2

I.1      Creation of Trust..................................................................................... 2

I.2      Purpose of Plan Trust ............................................................................ 2

I.3      Transfer of Plan Trust Assets ................................................................ 2

I.4      Liquidation of Plan Trust Assets ........................................................... 3

I.5      Appointment and Acceptance of Plan Trustee ...................................... 3

I.6      Incidents of Ownership ......................................................................... 3

I.7      Rights of Plan Trust Beneficiaries......................................................... 3

**ARTICLE II: PLAN TRUST BENEFICIARIES** .......................................... 4

II.1     Conflicting Claims ................................................................................ 4

II.2     Rights of Plan Trust Beneficiaries......................................................... 4

II.3     Interest Beneficial Only ........................................................................ 4

II.4     Evidence of Beneficial Interest.............................................................. 4

II.5     Transfers of Beneficial Interests............................................................ 5

**ARTICLE III: DURATION AND TERMINATION OF PLAN TRUST** ............. 5

III.1    Duration ................................................................................................ 5

III.2    Discharge of Plan Trustee ..................................................................... 5

III.3    Closing of Chapter 11 Case .................................................................. 5

III.4    Post-Termination ................................................................................... 5

**ARTICLE IV: DISTRIBUTIONS AND ADMINISTRATION OF PLAN TRUST** ............... 6

IV.1    Generally............................................................................................... 6

IV.2    Procedures for Treating and Resolving Disputed Claims...................... 6

-i-

IV.3     Intentionally Omitted ............................................................................... 6

IV.4     Plan Trust Reserves ................................................................................. 7

IV.5     Distributions ............................................................................................ 7

IV.6     Exchange Act ........................................................................................... 9

IV.7     Fiscal Year ............................................................................................... 9

IV.8     Books and Records .................................................................................. 9

**ARTICLE V: TAX MATTERS** ................................................................................ 9

V.1     Tax Treatment ........................................................................................... 9

V.2     Tax Reporting ......................................................................................... 11

V.3     Tax Payment .......................................................................................... 11

V.4     Expedited Determination ....................................................................... 12

**ARTICLE: VI POWERS OF AND LIMITATIONS ON THE PLAN TRUSTEE** ............... 12

VI.1     Powers of the Plan Trustee .................................................................... 12

VI.2     Limitations on Plan Trustee ................................................................... 14

VI.3     Agents and Professionals; Employees .................................................. 14

VI.4     No Further Approvals Required/Transfer of Plan Trust Assets ............. 14

**ARTICLE VII: CONCERNING THE PLAN TRUSTEE** ........................................... 15

VII.1     Generally ................................................................................................ 15

VII.2     Reliance by Plan Trustee ....................................................................... 15

VII.3     Liability to Third Persons ...................................................................... 15

VII.4     Non-liability of Plan Trustee for Acts of Others ................................... 15

VII.5     Indemnity ............................................................................................... 16

VII.6     Compensation and Expenses ................................................................. 16

**ARTICLE VIII: SUCCESSOR PLAN TRUSTEES** ...............................................................16

VIII.1   Resignation ...................................................................................................16

VIII.2   Effect of Resignation.......................................................................................16

VIII.3   Replacement..................................................................................................17

VIII.4   Acceptance of Appointment by Successor Plan Trustee...............................................17

**ARTICLE IX: MISCELLANEOUS PROVISIONS** ...........................................................17

IX.1   Fiduciary Obligation..........................................................................................17

IX.2   Governing Law.................................................................................................18

IX.3   Jurisdiction.....................................................................................................18

IX.4   Severability.....................................................................................................18

IX.5   Notices..........................................................................................................18

IX.6   Headings........................................................................................................18

IX.7   Plan..............................................................................................................18

IX.8   Cooperation....................................................................................................18

IX.9   Entire Plan Trust Agreement.................................................................................19

IX.10   Named Party..................................................................................................19

IX.11   Amendment...................................................................................................19

IX.12   Meanings of Other Terms...................................................................................19

IX.13   Counterparts..................................................................................................19

# PLAN TRUST AGREEMENT

SURGICAL SPECIALTY HOSPITAL PLAN TRUST AGREEMENT, dated as of _____ , 2014 (the "**Plan Trust Agreement**"), by and between Surgical Specialty Hospital of Arizona, LLC, as settlor, (the "**Debtor**") and David Gonzales (the "**Plan Trustee**"), as trustee of the Surgical Specialty Hospital Plan Trust (the "**Plan Trust**") referred to herein, hereby establish the Plan Trust, pursuant to the provisions set forth herein.

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtor's Chapter 11 Plan of Reorganization dated August 22, 2014 and Disclosure Statement in Support of Debtor's Chapter 11 Plan of Reorganization* (the "**Plan**" and "**Disclosure Statement**").

## BACKGROUND

A.      On November 19, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.      On or about August 29, 2014, the Debtor filed its Plan and Disclosure Statement.

C.      The Disclosure Statement was approved on October 7, 2014.

D.      On or about [_____] the Bankruptcy Court entered an order (the "**Confirmation Order**") confirming the Plan.

E.      The Plan provides that, on the Effective Date, the Plan Trust shall be created and all of the Plan Trust Assets shall be transferred to the Plan Trust, pursuant to the terms of this Plan Trust Agreement, solely for distribution in accordance with this Plan Trust Agreement, the Plan and the Confirmation Order.

F.      The Plan Trust is being created pursuant to this Plan Trust Agreement for the sole purpose of (1) administering and liquidating the **Plan Trust Assets** and distributing proceeds thereof (the "**Plan Trust Proceeds**") and (2) facilitating the exchange of certain Interests in the Debtor for Reorganized Debtor Interests, all for the benefit of holders of Allowed Claims and Allowed Interests, and Surgical Care Affiliates LLC ("**SCA**") (collectively, the "**Plan Trust Beneficiaries**") in accordance with this Plan Trust Agreement, the Plan and the Confirmation Order.

G.      The Plan Trust is intended to qualify as a liquidating trust for U. S. federal income tax purposes within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" for U.S. federal income tax purposes, pursuant to the provisions of Subpart E of Subchapter J of Chapter 1 of the Internal Revenue Code of 1986, as amended (the "IRC"), and to be Case 2:13-bk-exempt from the requirements of the Investment Company Act of 1940 pursuant, *inter alia,* to Sections 7(a) and 7(b) thereof.

H.      In the event the Plan Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to this Plan Trust Agreement intend that the Plan Trustee take any action deemed necessary to have the Plan Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-

3 (but not a publicly traded partnership under Section 7704 of the IRC), including, if necessary, creating or converting the Plan Trust into an Arizona limited liability partnership or limited liability company.

I.      The Plan Trustee shall have all powers necessary to implement the provisions of this Plan Trust Agreement and administer the Plan Trust, including, without limitation, the power to (i) prosecute for the benefit of the Plan Trust Beneficiaries through counsel and other professionals selected by the Plan Trustee any causes of action that may be held by the Plan Trust; (ii) review and, as necessary, object to any Claims against or Interests in the Debtor; (iii) preserve, maintain and liquidate the Plan Trust Assets; (iii) distribute the Plan Trust Proceeds to the Plan Trust Beneficiaries; (iv) facilitate the exchange of certain Interests in the Debtor for Reorganized Debtor Interests; and (v) otherwise perform the functions and take the actions provided for in this Plan Trust Agreement or permitted in the Plan or in any other agreement executed pursuant to the Plan.

J.      **NOW, THEREFORE,** in consideration of the promises and the mutual covenants contained herein, the Debtor and the Plan Trustee agree as follows:

**A R T I C L E   I**
**<u>DECLARATION OF TRUST</u>**

I.1    <u>Creation of Trust.</u> The Debtor and the Plan Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the Plan Trust, which shall bear the name "**<u>Surgical Specialty Hospital Plan Trust</u>**." In connection with the exercise of the Plan Trustee's power hereunder, the Plan Trustee may use this name or such variation thereof as the Plan Trustee sees fit.

I.2    <u>Purpose of Plan Trust.</u> The purpose of this Plan Trust Agreement is to implement the Plan on behalf, and for the benefit, of the Plan Trust Beneficiaries by serving as a mechanism for transferring the Plan Trust Proceeds to the Plan Trust Beneficiaries in accordance with this Plan Trust Agreement, the Plan, the Confirmation Order and Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Plan Trust will not hold itself out as an investment company and will not conduct a trade or business.

I.3    <u>Transfer of Plan Trust Assets.</u>

(a)     The Debtor hereby transfers on the Effective Date all of the Plan Trust Assets to the Plan Trust for the sole benefit of the Plan Trust Beneficiaries pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and the Confirmation Order, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code section 1141(c). Nothing in this Plan Trust Agreement is intended, or shall be construed, to effect a release, extinguishment or compromise of any claim or cause of action transferred to the Plan Trust pursuant to this Plan Trust Agreement. The Plan Trust Assets, the Plan Trust Proceeds and all other property held from time to time by the Plan Trust under this Plan Trust Agreement, and any earnings, including, without limitation, interest, on any of the foregoing, are to be applied by the Plan Trustee in accordance with the terms hereof,

the Plan and the Confirmation Order for the benefit of the Plan Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms hereinafter set forth.

(b)     For all federal, state and local income tax purposes, all relevant parties (including, without limitation, the Debtor, the Plan Trustee and the Plan Trust Beneficiaries) shall treat the transfer of the Plan Trust Assets to the Plan Trust for the benefit of the Plan Trust Beneficiaries, whether the applicable Claims and Interests are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Plan Trust (but only at such time as actually transferred) as (i) each holder of an Allowed Claim or Allowed Interest transferring such Allowed Claim or Allowed Interest to the Debtor in exchange for such holder's share of the Plan Trust Assets in addition to other distributions to which such holder may be entitled under the Plan, and then (ii) as such holder transferring its share of the Plan Trust Assets to the Plan Trust in exchange for such holder's share of Plan Trust Proceeds in accordance with the terms of the Plan (collectively, the "**Beneficial Interests**"). Such holder (and all holders collectively) shall be treated as the grantor(s) and owner(s) of the Plan Trust. To the extent Plan Trust Assets are allocable to Disputed Claims that are the responsibility of the Plan Trust to resolve, all such relevant parties shall treat such Plan Trust Assets as transferred directly to the Disputed Claims Reserve.

I.4     Liquidation of Plan Trust Assets. Pursuant to terms of the Plan and this Plan Trust Agreement, the Plan Trustee shall liquidate and convert to Cash the Plan Trust Assets, make timely distributions in accordance with the terms hereof and not unduly prolong the existence of the Plan Trust. The Plan Trustee shall exercise reasonable business judgment and liquidate the Plan Trust Assets to maximize net recoveries, provided, however, that the Plan Trustee shall be entitled to take into consideration the risks, timing and costs of potential actions in making determinations as to the maximization of recoveries. Such liquidations may be accomplished through (a) the prosecution, compromise, settlement, abandonment and/or dismissal of any or all claims, rights or causes of action, (b) the sale, abandonment and/or other disposition of the Plan Trust Assets (in whole or in combination, and including the sale of any claims, rights or causes of action), or (c) such other means as the Plan Trustee may determine, in the exercise of the Plan Trustee's reasonable business judgment, to be appropriate. The Plan Trustee may incur reasonable and necessary expenses in connection with the liquidation and conversion of the Plan Trust Assets into Cash or in connection with the administration of the Plan Trust.

I.5     Appointment and Acceptance of Plan Trustee. The Plan Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Plan Trustee accepts the Plan Trust created by this Plan Trust Agreement and the grant, assignment, transfer, conveyance and delivery to the Plan Trustee, on behalf, and for the benefit, of the Plan Trust Beneficiaries, by the Debtor, of all its respective right, title and interest in the Plan Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order.

I.6     Incidents of Ownership. The Plan Trust Beneficiaries shall be the sole beneficiaries of the Plan Trust and the Plan Trust Assets, and the Plan Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order.

I.7     Rights of Plan Trust Beneficiaries. Upon receipt of a written request from a Plan Trust Beneficiary for a determination of a matter within the administration of the Plan Trust, the

Plan Trustee shall take such action as he determines reasonable in good faith and his best business judgment consistent with, and in furtherance of, the purpose of this Plan Trust Agreement. A Plan Trust Beneficiary may seek review by the Bankruptcy Court of a determination or action by the Plan Trustee under this Plan Trust Agreement. In the event that a Plan Trust Beneficiary seeks review by the Bankruptcy Court of a determination or action of the Plan Trustee, the Plan Trustee shall respond to, appear on account of, and participate in such proceedings as may be required by the Bankruptcy Court for resolution of such request for review.

# A R T I C L E   I I
## PLAN TRUST BENEFICIARIES

II.1    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Beneficial Interest, the Plan Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Plan Trustee may elect to make no payment or distribution with respect to the Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Plan Trustee shall refer such conflicting claims or demands to the Bankruptcy Court and/or any court of competent jurisdiction, as may be appropriate, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Plan Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands. The Plan Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order or (b) all differences have been resolved by a written agreement among all of such parties and the Plan Trustee, which agreement shall include a complete release of the Plan Trust and the Plan Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this Section  II.1). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Plan Trustee shall hold in a segregated interest-bearing account with a U.S. financial institution any payments or distributions from the Plan Trust to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Plan Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

II.2    Rights of Plan Trust Beneficiaries. Each Plan Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Plan Trust Beneficiary hereunder according to the terms of its Beneficial Interest. Each Plan Trust Beneficiary shall take and hold the same, subject to all the terms and conditions of this Plan Trust Agreement, the Plan and the Confirmation Order. The interest of a Plan Trust Beneficiary is hereby declared and shall be, in all respects, personal property. Except as expressly provided hereunder, a Plan Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Plan Trust or the Plan Trust Assets.

II.3    Interest Beneficial Only. The ownership of a Beneficial Interest in the Plan Trust shall not entitle any Plan Trust Beneficiary to any title in or to the Plan Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

II.4    Evidence of Beneficial Interest. Ownership of a Beneficial Interest in the Plan Trust will be evidenced by the books and records of the Plan Trust maintained by the Plan Trustee. The Plan Trustee shall, upon written request of a Plan Trust Beneficiary, provide

-4-

reasonably adequate documentary evidence of such Plan Trust Beneficiary's Beneficial Interest, as indicated in the books and records of the Plan Trust, provided, however, that no physical certificates shall be issued representing the Beneficial Interests. The expense of providing such documentation shall be borne solely by the requesting Plan Trust Beneficiary.

II.5 <u>Transfers of Beneficial Interests.</u> Beneficial Interests may not be transferred, sold or assigned.

II.6 <u>Termination of Beneficial Interests</u>. A Plan Trust Beneficiary shall no longer be a beneficiary of this Plan Trust once its Claim or Interest is paid, adjudicated or otherwise resolved.

# A R T I C L E   I I I
## DURATION AND TERMINATION OF PLAN TRUST

III.1 <u>Duration.</u> The Plan Trust shall become effective upon the Effective Date and shall remain and continue in full force and effect until terminated as provided herein. The Plan Trust shall terminate (the "**<u>Termination Date</u>**") automatically upon the occurrence of the closing of the Chapter 11 Cases in accordance with the terms of Section _____ of this Plan Trust Agreement, but no later than at the end of three (3) years from the Effective Date; <u>provided, however,</u> that, on or prior to a date less than six (6) months prior to such termination, the Bankruptcy Court upon motion may extend the term of the Plan Trust if necessary to liquidate any remaining Plan Trust Assets (in a manner that would maximize the value of such assets). Notwithstanding the foregoing, after the termination of the Plan Trust, the Plan Trustee shall have the power to exercise all powers, authorities and discretions herein conferred until the complete distribution of the Plan Trust Assets to the Plan Trust Beneficiaries.

III.2 <u>Discharge of Plan Trustee</u>. Upon termination of the Plan Trust, the Plan Trustee shall render a final report and file it with the Bankruptcy Court. The final report shall contain the following information: a) all assets and funds of the Plan Trust originally charged under the Plan Trustee's control; b) all funds transferred into and out of the Disputed Claims Reserve; c) a summarized accounting, in sufficient detail, of all purchases, sales, gain, losses, and income in connection with the Plan Trust during the Plan Trustee's term of service, and d) the ending balance of all assets and funds of the Plan Trust as of the date of discharge. Upon termination and complete satisfaction of its duties under the Plan Trust Agreement, the Plan Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Plan Trust other than those attributable to fraud, gross negligence or willful misconduct of the Plan Trustee.

III.3 <u>Closing of Chapter 11 Case.</u> Once all the Disputed Claims and Interests have become Allowed Claims and Allowed Interests or have been disallowed by Final Order, and all distributions in respect of Allowed Claims and Interests have been made in accordance with the Plan, or at such earlier time as the Plan Trustee deems appropriate, the Plan Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

III.4 <u>Post-Termination.</u> After the termination of the Plan Trust and solely for the purpose of liquidating and winding up the affairs of the Plan Trust, the Plan Trustee shall continue to act as such until its duties have been fully performed. Upon distribution of all of the Plan Trust Assets, the Plan Trustee shall retain the books, records and files that shall have been delivered to

or created by the Plan Trustee. At the Plan Trustee's discretion, all of such books, records and files may be destroyed at any time following the date that is a minimum of two (2) year after the final distribution of Plan Trust Assets (unless such books, records and files are necessary to fulfill the Plan Trustee's obligations herein). However, because tax law requires that information regarding the preparation of a tax return must be maintained for a period of up to four years after the date of filing, the Trustee will provide for such record keeping to the extent that the Trust is required to file any return for federal or state income tax purposes and such costs shall be considered to be part of the administrative costs of the Plan Trust. Except as otherwise specifically provided herein, upon the final distribution of Plan Trust Assets, the Plan Trustee shall be deemed discharged and have no further duties or obligations hereunder, the Beneficial Interests shall be cancelled and the Plan Trust will be deemed to have been dissolved.

## A R T I C L E   I V
## DISTRIBUTIONS AND ADMINISTRATION OF PLAN TRUST

IV.1    Generally.

(a)    Funding for the Distribution to Plan Trust Beneficiaries. The distributions to holders of Allowed Claims and Interests and Surgical Care Affiliates, LLC ("**SCA**") contemplated under the Plan shall be made only after the payment or reservation, as applicable, from the Plan Trust Proceeds the expenses of administering the Plan Trust, including, without limitation, the winding down and closing of the Chapter 11 Cases (including with respect to any fees and expenses incurred by any Professionals after the Confirmation Date), the fees and expenses of the Plan Trustee and its retained professionals.

(b)    No Further Court Authorization. Except as provided herein, the Plan or the Confirmation Order, the Plan Trustee will continue the orderly administration of the Plan Trust Assets and otherwise implement the provisions of the Plan, and, in connection with the foregoing, may transfer the Plan Trust Assets without necessity of any further order of the Bankruptcy Court and/or state court or other governmental body.

IV.2    Procedures for Treating and Resolving Disputed Claims or Interests.

(a)    Process for Objection to Claims. The Plan Trustee shall have the exclusive right to file, prosecute, resolve and otherwise deal with objections to Claims in accordance with the Plan and Confirmation Order.

(b)    No Distribution Pending Allowance. If any portion of a Claim or Interest is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

(c)    Distributions After Allowance. Any Claim or Interest (or portion thereof) that is Disputed and then subsequently Allowed, shall be an Allowed Claim, not a Disputed Claim, in such amount and to the extent it is subsequently Allowed. Except as otherwise provided herein, if, on or after the Effective Date, any Disputed Claim or Interest becomes an Allowed Claim or Interest, the Plan Trustee shall distribute to the holder of such Claim, from the applicable fund or reserve in accordance with the Plan, the amount such holder would have

received had its Claim been Allowed on the Effective Date as determined by distributions actually made to other holders of Allowed Claims.

(d)     _Disputed Claims_.  The Plan Trustee shall have the authority to settle all Disputed Claims or Interests in the amount of $100,000 or less without further Bankruptcy Court order.

IV.3     _Intentionally Omitted._

IV.4     _Plan Trust Reserves._

(a)     _Trust Administration Account._ The Plan Trustee shall have the authority to establish and maintain accounts (the "**Trust Administration Account**") and utilize the funds in these accounts (i) to pay reasonable administrative expenses of the Plan Trust that are incurred (including, but not limited to, any taxes imposed on the Plan Trust or professional fees and expenses in connection with the administration and liquidation of the Plan Trust Assets and preservation of books and records); (ii) to satisfy other obligations or other liabilities incurred or assumed by the Plan Trust (or to which the Plan Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order or this Plan Trust Agreement, including fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Plan Trust Assets and the costs of investigating, prosecuting and resolving the Plan Trust Causes of Action and other Plan Trust Assets; and (iii) to satisfy any other obligations of the Plan Trust expressly set forth in the Plan.

(b)     _Disputed Claim Reserves._

(i)     _Establishment._ On the Effective Date, the Plan Trustee shall set aside Cash sufficient in the aggregate to fund the Disputed Claims Reserves as originally defined in the Plan and further described in this Plan Agreement.  Once such Disputed Claims are resolved and become Allowed, Cash in the Disputed Claims Reserves shall be made available for distribution to the holders of such newly Allowed Claims and to holders of Allowed Interests and SCA in accordance with the Plan and Confirmation Order.

(ii)     _Funding Amount_. The Plan Trustee shall fund the Disputed Claims Reserve based on the greater of (a) the face amount of the Disputed Claim holder's Proof of Claim, if reasonable; or (b) the amount set forth in the Debtor's Schedules with respect to such Disputed Claim.  On the Effective Date or shortly thereafter, the Plan Trustee shall fund such other  reserves in Cash on account of: (i) the projected costs projected to wind down and close the Chapter 11 Case (including any fees and expenses incurred by any Professional after the Confirmation Date), and the fees and expenses of the plan Trustee and its retained professionals; (ii) priority or other administrative claims; (iii) the projected United States Trustees' fees through closing of the Chapter 11 Case; and (iv) payments of interest as contemplated under the Plan.

(iii)     _Other Reserves._ On the Effective Date, and as may be necessary and appropriate from time to time, the Plan Trustee shall set aside amounts necessary to effect distributions for all Beneficial Interests in accordance with Section IV.5 of this Plan Trust Agreement.

IV.5   Distributions.

(a)   Party Responsible For Making Distributions. The Plan Trustee shall be charged with making all Cash distributions under the Plan with respect to all Allowed Claims and Interests and for initiating and facilitating all exchanges of Interests in the Debtor for Reorganized Debtor Interests under the Plan and in accordance with the Exchange Procedures attached as Exhibit A.

(b)   Tax Consequences.  Notwithstanding the foregoing, each holder of an Allowed Claim or Interest that receives a distribution under the Plan shall have the sole and exclusive responsibility for any taxes imposed by any governmental unit, including income, withholding and other taxes, on account of such distribution.

(c)   Delivery of Distributions and Undeliverable Distributions. Subject to Bankruptcy Rule 9010, all distributions to any Plan Trust Beneficiary shall be made at the address of such holder as set forth on either the Schedules or the books and records of the Debtor, unless the Plan Trustee has otherwise been notified by the holder in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on either the Schedules or the Debtor's books and records. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Trustee is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. At the option of the Plan Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. Checks issued by the Plan Trustee to Plan Trust Beneficiaries  shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. All demands for undeliverable distributions (including requests for re-issuance of any voided check) shall be made to the Plan Trustee on or before thirty (30) days after the expiration of the ninety (90) day period after the date such undeliverable distribution was initially made or the check was originally issued, as applicable. Thereafter, the amount represented by such undeliverable distribution (including a voided check) shall be deemed forfeited, and any Claim in respect of such undeliverable distribution (including a voided check) shall be disallowed, discharged and forever barred from asserting any such Claim or Interest against the Plan Trust and Released Parties. Any distributions that are forfeited or otherwise cancelled shall be distributed to the holders of Allowed General Unsecured Claims (other than those whose distributions are deemed undeliverable hereunder) until paid in full and then to equity Interest in accordance with the Plan. All distributions consisting of the exchange of Interests in the Debtor for Reorganized Debtor Interest shall be initiated and facilitated by the Plan Trustee in accordance with the Plan and the Exchange Procedures. Subject to funding and maintenance of sufficient Disputed Claim Reserves, and if all Allowed Unsecured Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full, then undeliverable distributions under this section may be distributed to holders of Allowed Interests in accordance with the Plan Trust Agreement.

(d)   Priority of Distribution of Trust Proceeds. Subject to funding and maintenance of sufficient Disputed Claim Reserves as set forth in this Plan Trust Agreement, the Plan Trustee shall apply any Plan Trust Assets available for distribution and any proceeds therefrom in the order and reflecting the priorities set forth below:

(i)  Costs and Expenses of the Plan Trust. First, the Plan Trustee shall pay all liabilities, costs and expenses of the Plan Trust, including, without limitation, (x) payment of all professionals, employees, or agents of the Plan Trust, (y) compensation due and payable to the Plan Trustee as specified in Section VII.6 of this Plan Trust Agreement; (z) reimbursement for any and all costs, expenses and liabilities incurred by the Plan Trustee in connection with the performance of its duties under this Plan Trust Agreement.

(ii)  Administrative/Priority/Secured and Unsecured Claims. Second, the Plan Trustee shall pay Allowed Claims in accordance with the Plan, the Confirmation Order and in the priorities set forth in the Bankruptcy Code.

(iii)  Allowed Interests. Third, to make the payments required under the Plan to holders of Allowed Interests and to SCA in accordance with the terms, provisions and priorities set forth in the Plan and the Exchange Procedures.

IV.6  Exchange Act. The Plan Trust is not intended to be subject to the registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act") or the rules and regulations promulgated thereunder, and neither are the Beneficial Interests intended to be "securities" as that term is used in the Exchange Act and applicable U.S. securities laws. The Plan Trustee shall take such actions and implement its duties and powers with respect to the Plan Trustee, to the furthest extent reasonably practicable, so as not to cause the Plan Trust to be required to register under the Exchange Act.

IV.7  Fiscal Year. Except for the first and last years of the Plan Trust, the fiscal year of the Plan Trust shall be the calendar year. For the first and last years of the Plan Trust, the fiscal year of the Plan Trust shall be such portion of the calendar year that the Plan Trust is in existence.

IV.8  Books and Records.

(a)  The Plan Trustees' records shall be sufficient to enable determination, among other things, of whether such distributions and disbursements made by the Plan Trustee were in compliance with the terms of the Plan and the Plan Trust Agreement.

(b)  The Plan Trustee shall comply with applicable law regarding tax reporting.

(c)  The Plan Trustee shall file quarterly post-confirmation reports as required by the Bankruptcy Code and Rules. Such reports shall specify in reasonable detail (a) the status of the Plan Trust Assets, including any settlements entered into by the Plan Trust; (b) the fees and expenses of the Plan Trust and Plan Trustee, including any professional fees incurred and/or earned during the most recent quarter; (c) the aggregate amount of distributions from the Plan Trust to the Plan Trust Beneficiaries during the most recent quarter and (d) the current amount of Disputed Claim Reserves.

# A R T I C L E   V
# TAX MATTERS

V.1  Tax Treatment. For all federal and applicable state and local income tax purposes:

(a)     All parties (including, without limitation, the Debtor, the Plan Trustee and the Plan Trust Beneficiaries) shall treat the transfer of the Plan Trust Assets to the Plan Trust for the benefit of the Plan Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Plan Trust (but only at such time as actually transferred) as (i) a transfer of the Plan Trust Assets (subject to any obligations relating to such Plan Trust Assets) directly to the Plan Trust Beneficiaries and, to the extent the Plan Trust Assets are allocable to Disputed Claims that are the responsibility of the Plan Trust to resolve, to the Disputed Claims Reserve , followed by (ii) the transfer by the Plan Trust Beneficiaries to the Plan Trust of the Plan Trust Assets (other than the Plan Trust Assets allocable to the Disputed Claims Reserve) in exchange for Interests in the Plan Trust. Accordingly, the Plan Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Plan Trust Assets (other than such Plan Trust Assets as are allocable to the Disputed Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)     All parties shall treat the Plan Trust as a "liquidating trust" within the meaning of Treasury Regulation §301.7701-4(d) and as a "grantor trust" pursuant to the provisions of Subpart E of Subchapter J of Chapter 1 of the IRC and any comparable provision of state or local law, of which the beneficiaries of the Plan Trust are the owners and grantors, and treat the beneficiaries of the Plan Trust as the direct owners of an undivided interest in Plan Trust Assets (other than any assets allocable to the Disputed Claims Reserve), consistent with their economic interests therein.

(c)     In the alternative, if the Plan Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), then this Plan Trust Agreement is intended to empower the Plan Trustee to take such action as he shall deem appropriate to have the Plan Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3, including, if necessary, creating or converting it into a limited liability partnership or limited liability company that is so qualified, subject to the provisions of Sections VI.1(b), VI.1(b)(xii), VI.2, and IX.11 hereof.

(d)     Each transfer of Plan Trust Assets (other than any assets allocable to Disputed Claims) to the Plan Trust shall be treated as a transfer of such assets directly to the holders of Claims that constitute Plan Trust Beneficiaries in partial satisfaction of their Claims (with each Plan Trust Beneficiaries receiving an undivided interest in such assets in accord with their economic interests in such assets), followed by the transfer by the Plan Trust Beneficiaries to the Plan Trust of such assets in exchange for the Beneficial Interests in the Plan Trust.

(e)     The Plan Trustee will make a good faith valuation of the Plan Trust Assets. All parties must consistently use such valuation for all federal and applicable state and local income tax purposes.

(f)     Allocations of the Plan Trust's taxable income (other than income attributable to assets in the Disputed Claims Reserve ) among the Plan Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions) if, immediately prior to such deemed distribution, the Plan Trust had distributed all of its other assets (valued at their tax book value and other than assets allocable to Disputed Claims) to the Plan Trust Beneficiaries, in each case up to the tax book

-10-

value of the assets treated as contributed by such beneficiaries of the Plan Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Plan Trust. Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Plan Trust Assets. The tax book value of the Plan Trust Assets for this purpose shall equal their fair market value on the date such assets are transferred to the Plan Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury regulations, and other applicable administrative and judicial authorities and pronouncements.

(g)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Plan Trust of a private letter ruling if requested, or the receipt of an adverse determination by the IRS upon audit if not contested), the Plan Trust shall

(h)     The Plan Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Plan Trustee or the Plan Trust under non-United States law relating to taxes. The Plan Trustee, or any other legal representative of the Plan Trust, shall not distribute the Plan Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to taxes.

(i)     Timely elect to treat any Disputed Claims Reserve as "disputed ownership funds" governed by Treasury Regulation section 1.468B-9 by timely making an election, and (ii) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Beneficial Interests shall report, for all tax purposes, consistent with the foregoing. With respect to any Plan Trust Assets and any other income or gain of the Plan Trust allocable to Disputed Claims , the Plan Trustee shall cause the Plan Trust to pay any taxes imposed on the Plan Trust by any federal, state or local, or any non-U. S. taxing authority. The amount of such taxes paid by the Plan Trust with respect to a Disputed Claim (i) will reduce the amount distributed with respect to such Claim to the extent it becomes an Allowed Claim and (ii) to the extent such Claim does not become an Allowed Claim, will reduce distributions ; provided, however, that any taxes that reduce distributions pursuant to the foregoing clauses (i) and (ii) shall, for all purposes of this Agreement, be treated as amounts distributed to those holders of Claims whose distributions are so reduced.

V.2     Tax Reporting. The "taxable year" of the Plan Trust shall be the "calendar year" as those terms are defined in Section 441 of the IRC. The Plan Trust shall file with the IRS returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Plan Trustee also shall send annually (within seventy-five (75) days after the end of each calendar year) to each Plan Trust Beneficiary a separate statement setting forth the Plan Trust Beneficiary's share of items of income, gain, loss, deduction or credit, and shall instruct all of the Plan Trust Beneficiaries to report such items on their U.S. federal income tax returns or to forward the appropriate information to such Plan Trust Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U. S. federal income tax returns. Such reporting shall also occur within sixty (60) days of the dissolution of the Plan Trust.

V.3     Tax Payment. The Plan Trustee shall be responsible for the payment, out of the Plan Trust, of any taxes imposed on the Plan Trust or the Plan Trust Assets, including the

Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay any portion of such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims subsequently have been resolved, deducted from any amounts distributable by the Plan Trustee as a result of the resolutions of such Disputed Claims.

V.4    Expedited Determination. The Plan Trustee may request an expedited determination of the taxes of the Plan Trust, including the Disputed Claims Reserve , under Bankruptcy Code section 505(b) for all returns for, or on behalf of the Plan Trust, for all taxable periods through the dissolution of the Plan Trust.

# A R T I C L E   V I
## POWERS OF AND LIMITATIONS ON THE PLAN TRUSTEE

VI.1    Powers of the Plan Trustee.

(a)    The Plan Trustee shall have the responsibility for administering the Plan Trust, maintaining the Disputed Claim Reserves and other reserves, liquidating the Plan Trust Assets and making distributions under the Plan. Pursuant to the terms of the Plan and the Confirmation Order, the Plan Trustee shall have various powers, duties and responsibilities concerning the prosecution of certain litigation claims, the disposition of assets, the resolution of claims and numerous other obligations relating to maximizing the proceeds of the Plan Trust Assets and the administration of the Plan Trust.

(b)    The Plan Trustee shall have such rights, powers and privileges expressly set forth in the Plan, the Confirmation Order and this Plan Trust Agreement, and as otherwise provided by applicable law. Subject to the other provisions herein, the Plan Trustee shall be expressly authorized to undertake the following actions, in the Plan Trustee's good faith judgment, in the best interests of the Plan Trust Beneficiaries and to maximize net recoveries therefor:

(i)    prosecute, settle or otherwise compromise or abandon for the benefit of the Plan Trust all Claims and Plan Trust Causes of Action transferred by the Debtor to the Plan Trust or arising in favor of the Plan Trust, including, without limitation, take any action with respect to appeals, counterclaims, and defenses of such claims and causes of action;

(ii)    settle any Claims and Plan Trust Causes of Action in an amount up to $100,000 without further order of the Bankruptcy Court or notice to any party, provided, however, that to settle Claims and Plan Trust Causes of Action in an amount greater than $100,000, the Plan Trustee must seek prior approval from the Bankruptcy Court;

(iii)    liquidate the Plan Trust Assets;

(iv)    execute any documents and take any other actions related to, or in connection with, the liquidation of the Plan Trust Assets and the exercise of the Plan Trustee's powers granted herein;

(v)    hold legal title to any and all rights of the Plan Trust Beneficiaries in, to or arising from the Plan Trust Assets;

(vi)    protect and enforce the rights to the Plan Trust Assets vested in the Plan Trustee by this Plan Trust Agreement by any method deemed reasonably appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law, and general principles of equity;

(vii)    take all reasonable actions to resolve Disputed Claims in accordance with Section IV.3 of this Plan Trust agreement and the terms of the Plan;

(viii)    make distributions of the Plan Trust Proceeds and other Plan Trust Assets to the appropriate Plan Trust Beneficiaries in accordance with this Plan Trust Agreement, the Plan and the Confirmation Order;

(ix)    file, if necessary, any and all tax returns with respect to the Plan Trust (and the Disputed Claims Reserve and Disputed Unsecured Claim) and pay taxes properly payable by the Plan Trust (and the Disputed Claims Reserve and Disputed Unsecured Claims), if any;

(x)    make all necessary filings concerning the Plan Trust in accordance with any applicable law, statute or regulation, including, but not limited to, the Exchange Act;

(xi)    determine and satisfy from the Plan Trust Assets any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, created, incurred or assumed by the Plan Trust that the Plan Trust reasonably requires to perform its responsibilities under the Plan without further order from the Bankruptcy Court;

(xii)    request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(xiii)    in the event that the Plan Trustee determines that the Plan Trust Beneficiaries or the Plan Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences, including taking any and all necessary actions as the Plan Trustee shall deem appropriate to have the Plan Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under IRC Section 7704), including, if necessary, creating or converting it into a limited liability partnership or limited liability company that is so qualified;

(xiv)    subject to the limitations set forth in Section VI.3 of this Plan Trust Agreement, retain and pay professionals, advisors and employees (including former advisors and employees of the Debtor), and contractors or other agents, including any and all estate professionals, from the Plan Trust Assets to carry out its duties and obligations hereunder;

(xv)    purchase customary insurance coverage if necessary;

-13-

(xvi) perform such functions and take such actions as are provided for or permitted in this Plan Trust Agreement, the Plan, the Confirmation Order or any other agreement executed pursuant to the Plan together with the right and authority to take such other actions, perform such other functions, and enter into such other agreements and instruments as the Plan Trustee, in the exercise of its reasonable business judgment, deems necessary or appropriate to fulfill the duties, rights and powers of the Plan Trustee contemplated in this Plan Trust Agreement, the Plan, the Confirmation Order or applicable law; and

(xvii) enter into, on behalf of the Plan Trust, escrow or similar agreements with U. S. financial institutions, on compensation and other terms acceptable to the Plan Trustee, for purposes of effecting distributions otherwise in accordance with this Plan Trust Agreement, the Plan and the Confirmation Order.

(xviii) invest Trust Assets in appropriate interest-bearing accounts.

VI.2    Limitations on Plan Trustee. No part of the Plan Trust Assets shall be used or disposed of by the Plan Trustee in furtherance of any trade or business. The Plan Trustee shall, on behalf of the Plan Trust, hold the Plan Trust out as a trust in the process of liquidation and not as an investment company. The Plan Trustee shall not become a market maker for the Beneficial Interests or otherwise attempt to create a secondary trading market for the Beneficial Interests. The Plan Trustee shall not engage in any investments or activities inconsistent with the treatment of the Plan Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) while the Plan Trustees intend the Plan Trust to qualify as a liquidating trust; provided, however, that if the Plan Trust (or a limited liability company or limited liability partnership into which it shall be converted) shall be classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3, these restrictions shall not apply. The Plan Trustee shall be restricted to the liquidation of the Plan Trust Assets on behalf, and for the benefit, of the Plan Trust Beneficiaries; the distribution and application of Plan Trust Assets for the purposes set forth in this Plan Trust Agreement, the Plan and the Confirmation Order; and the conservation and protection of the Plan Trust Assets and the administration thereof in accordance with the provisions of this Plan Trust Agreement, the Plan and the Confirmation Order.

VI.3    Agents and Professionals; Employees.  The Plan Trust may employ such counsel (which may be the same counsel employed by the Debtor), advisors (which may be the same advisors formerly employed by the Debtor) and other professionals selected by the Plan Trustee that the Plan Trust reasonably requires to perform its responsibilities under the Plan without further order from the Bankruptcy Court. The Plan Trust's professionals shall be compensated for services rendered at rates reflecting actual time billed by such professional or entity on an hourly basis at the standard billing rate in effect at the time of service. The Plan Trust's professionals shall be reimbursed for reasonable out of pocket expenses incurred.  The Plan Trustee may pay fees and expenses of such professionals  without further motion, application, notice or other order of the Bankruptcy Court. The fees and expenses of the Plan Trust's professionals shall be satisfied out of the Plan Trust Assets. In the event of any dispute concerning the entitlement to, or the reasonableness of, any compensation and/or expenses of any professional for the Plan Trust, either the Plan Trustee or the affected party may ask the Bankruptcy Court to resolve the dispute.

-14-

VI.4 No Further Approvals Required/Transfer of Plan Trust Assets. In performance of its duties hereunder, the Plan Trustee shall have the rights and powers of a debtor in possession under Bankruptcy Code section 1107, and such other rights, powers, and duties necessary, appropriate, advisable or convenient to effectuate the provisions of the Plan. On and after the Effective Date, the Plan Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or governmental body and/or provide any notices under any applicable laws to implement the terms of the Plan, including, without limitation, the transfer of any Plan Trust Assets retained by the Plan Trust. As further set forth in this Plan Trust Agreement, without limiting the foregoing, the Plan Trustee shall be authorized pursuant to the Plan to distribute any or all of the Plan Trust Assets without necessity of any further notice or approval of the Bankruptcy Court and/or under any applicable state or federal law.

# A R T I C L E   V I I
## CONCERNING THE PLAN TRUSTEE

VII.1 Generally. The Plan Trustee shall exercise such rights and powers vested in it by this Plan Trust Agreement, the Plan and the Confirmation Order, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of its own affairs. No provision of this Plan Trust Agreement, the Plan or the Confirmation Order shall be construed to relieve the Plan Trustee from liability for his own gross negligence, fraud or reckless, intentional or willful misconduct, except that the Plan Trustee shall not be liable for any action taken in good faith in reliance upon the advice of professionals retained by the Plan Trustee in accordance with this Plan Trust Agreement.

VII.2 Reliance by Plan Trustee. Except as otherwise provided in this Plan Trust Agreement, the Plan or the Confirmation Order:

(a) the Plan Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Trustee to be genuine and to have been signed or presented by the proper party or parties; and

(b) persons (including any professionals retained by the Plan Trustee in accordance with this Plan Trust Agreement) engaged in transactions with the Plan Trustee shall look to only the Plan Trust Assets to satisfy any liability incurred by the Plan Trustee to such person in carrying out the terms of this Plan Trust Agreement, the Plan or the Confirmation Order, and the Plan Trustee shall have no personal or individual obligation to satisfy any such liability. Notwithstanding the foregoing, the Plan Trustee may be held liable for his gross negligence, fraud, or willful misconduct.

VII.3 Liability to Third Persons. No Plan Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Plan Trust Assets or the affairs of the Plan Trustee. The Plan Trustee and agents of the Plan Trustee shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Plan Trust Assets or the affairs of the Plan Trust, except for its own gross negligence, fraud or reckless, intentional or willful misconduct, and all such persons shall look solely to the Plan Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Plan Trust. Other than as set forth in the Plan or in the

-15-

Confirmation Order, nothing in this Section VII.3 shall be deemed to release any Plan Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

VII.4    Non-liability of Plan Trustee for Acts of Others. Nothing contained in this Plan Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Plan Trustee of any of the liabilities, obligations or duties of the Debtor and shall not be deemed to be or contain a covenant or agreement by the Plan Trustee to assume or accept any such liability, obligation or duty. Any successor Plan Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Plan Trustee hereunder, and any statement or representation made as to the assets comprising the Plan Trust Assets or as to any other fact bearing upon the prior administration of the Plan Trust, so long as it has a good-faith basis to do so. The Plan Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. The Plan Trustee or any successor Plan Trustee shall not be liable for any act or omission of any predecessor Plan Trustee, nor have a duty to enforce any claims against any predecessor Plan Trustee on account of any such act or omission.

VII.5    Indemnity. The Plan Trustee and its agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "Indemnified Parties") shall be indemnified by the Plan Trust solely from the Plan Trust Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Plan Trustee solely in its capacity as such, provided, however, that the Plan Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence; fraud; or reckless, intentional or willful misconduct. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Plan Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, provided, however, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Plan Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

VII.6    Compensation and Expenses.   The Plan Trustee shall be compensated at his standard hourly rate for his services and reimbursed for its out-of-pocket expenses incident to the performance of its duties under the Plan. The Plan Trustee shall be paid without further motion, application, notice or  order of the Bankruptcy Court. The fees and expenses of the Plan Trustee shall be satisfied out of the Plan Trust Assets. In the event of any dispute concerning the entitlement  to, or the reasonableness of, any compensation and/or expenses of the Plan Trustee, the Bankruptcy Court may be requested to resolve the dispute.

# A R T I C L E   V I I I
## SUCCESSOR PLAN TRUSTEES

VIII.1  <u>Resignation</u>. The Plan Trustee may resign at any time upon not less than sixty (60) days' written notice to the Bankruptcy Court.

VIII.2  <u>Effect of Resignation</u>. The resignation, incompetency, bankruptcy or insolvency of the Plan Trustee shall not operate to terminate the Plan Trust or to revoke any existing agency created pursuant to the terms of this Plan Trust Agreement, the Plan or the Confirmation Order, or invalidate any action theretofore taken by the Plan Trustee. All fees and expenses incurred by the Plan Trustee prior to the resignation, incompetency or removal of the Plan Trustee shall be paid from the Plan Trust Assets, unless such fees and expenses are disputed by the successor Plan Trustee, in which case the Bankruptcy Court shall resolve the dispute, and any disputed fees and expenses of the predecessor Plan Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Plan Trust Assets. In the event of the resignation or removal of the Plan Trustee, such Plan Trustee shall

  (a)  promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Trustee or directed by the Bankruptcy Court to effect the termination of such Plan Trustee's capacity under this Plan Trust Agreement;

  (b)  promptly deliver to the successor Plan Trustee all documents, instruments, records and other writings related to the Plan Trust as may be in the possession of such Plan Trustee, <u>provided, however,</u> that the Plan Trustee may retain one copy of each of such documents for its purposes, subject to the terms of any joint prosecution and common interest agreement to which the Plan Trustee is party; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Trustee; and

  (c)  otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Trustee.

VIII.3  <u>Replacement</u>.  In the event that the Plan Trustee resigns, or in the event of the death of the Plan Trustee or other occurrence rendering the Plan Trustee incapacitated or unavailable for an extended period of thirty (30) consecutive days, a replacement Plan Trustee shall be designated by the Bankruptcy Court with the consent of both the Reorganized Debtor and a majority of the Plan Trust Beneficiaries in existence at that time or the Bankruptcy Court on its own order. A notice of the identity of the new Plan Trustee shall be filed with the Bankruptcy Court promptly after the new Plan Trustee is designated.

VIII.4  <u>Acceptance of Appointment by Successor Plan Trustee</u>. Any successor Plan Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in the case of the Plan Trustee's resignation, to the resigning Plan Trustee. Thereupon, such successor Plan Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Plan Trust with like effect as if originally named Plan Trustee and shall be deemed appointed pursuant to the Bankruptcy Code. The resigning or removed Plan Trustee shall duly assign, transfer and deliver to such successor Plan Trustee all property and money held by such resigning or removed Plan Trustee hereunder and shall, as

directed by the Bankruptcy Court or reasonably requested by such successor Plan Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Plan Trustee upon the trusts herein expressed all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Plan Trustee.

# A R T I C L E   I X
## MISCELLANEOUS PROVISIONS

IX.1 <u>Fiduciary Obligation</u>. The Trustee's powers are exercisable in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Agreement and the Trust it creates and not otherwise. The Trustee may arrange for payment of its reasonable fees and expenses from the Trust Assets as permitted herein.

IX.2 <u>Governing Law</u>. This Plan Trust Agreement shall be governed by and construed in accordance with the laws of the State of Arizona (without reference to conflicts of law).

IX.3 <u>Jurisdiction</u>. Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Plan Trust and the Plan Trustee, including, without limitation, the administration and activities of the Plan Trust and the Plan Trustee, <u>provided, however,</u> that notwithstanding the foregoing, the Plan Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any claims or causes of action assigned to the Plan Trust.

IX.4 <u>Severability</u>. In the event that any provision of this Plan Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Plan Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Plan Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

IX.5 <u>Notices</u>. Any notice or other communication required or permitted to be made under this Plan Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by telex, facsimile or other telegraphic means; sent by nationally recognized overnight delivery service; or mailed by first-class mail:

      (a)      if to the Plan Trustee, to:

            David Gonzales
            CKS Advisors
            The Forum at Scottsdale
            6262 N. Scottsdale Road, Ste. 390
            Scottsdale, AZ  85250

      (b)      if to any Plan Trust Beneficiary, to the last known address of such Plan Trust Beneficiary according to the Plan Trustee's records.

-18-

IX.6   Headings. The headings contained in this Plan Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Plan Trust Agreement or of any term or provision hereof.

IX.7   Plan. The terms of this Plan Trust Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order. However, to the extent that the terms of the Plan are inconsistent with the terms set forth in this Plan Trust Agreement with respect to the Plan Trust, then the Plan and the Confirmation Order shall govern.

IX.8   Cooperation. The Reorganized Debtor shall turn over or otherwise make available to the Plan Trustee at no cost to the Plan Trust or the Plan Trustee, all books and records reasonably required by the Plan Trustee to carry out his duties hereunder, and shall agree to otherwise reasonably cooperate with the Plan Trustee in carrying out its duties hereunder.

IX.9   Entire Plan Trust Agreement. This Plan Trust Agreement and the Annexes attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

IX.10   Named Party. In pursuing any Claims and/or Plan Trust Causes of Action, or in disposing of any Assets of the Plan Trust, or otherwise administering the Plan Trust or any Plan Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Plan Trustee may pursue such matters and/or execute any such documents in the name of "Plan Trust" and/or in his own name as Plan Trustee or in such other names or such representative capacities as necessary or appropriate in the Plan Trustee's discretion.

IX.11   Amendment. This Plan Trust Agreement may be amended by the Plan Trustee, provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Plan Trust Agreement that are inconsistent with the terms of the Plan or the Confirmation Order. Notwithstanding this Section IX.11, any amendments to this Plan Trust Agreement shall not be inconsistent with the purpose and intention of the Plan Trust to liquidate in an orderly manner the Plan Trust Assets (which will maximize the value of such assets) in accordance with Treasury Regulations Section 301.7701-4(d), or in the alternative, as allowed under Arizona law applicable to limited liability companies or limited liability partnerships, to not engage in a trade or business or encourage the creation of an active secondary trading market in the Beneficial Interests. In the event that the Plan Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), this Plan Trust Agreement may be amended by the Plan Trustee to the extent necessary for the Plan Trustee to take such action as it shall deem appropriate to have the Plan Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under IRC section 7704), including, if necessary, creating or converting it into a limited liability partnership or limited liability company that is so classified.

IX.12   Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities. All references

herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Plan Trust Agreement, and the word "herein" and words of similar import refer to this Plan Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Plan Trust Agreement. The term "including" shall mean "including, without limitation."

IX.13   <u>Counterparts</u>. This Plan Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**IN WITNESS WHEREOF,** the parties hereto have executed this Plan Trust Agreement or caused this Plan Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**DEBTOR**

By:_____

Name: _____

Title: _____


<u>David Gonzales                        </u>, as Plan Trustee

PHOENIX 99999-100 174207v1